## CROUCH FUNERAL HOME, INC. and AETNA INSURANCE COMPANY *v.* James Phillip CROUCH

77-220                                    557 S.W. 2d 392

Opinion delivered November 14, 1977
(Division II)

*Smith, Williams, Friday, Eldredge & Clark,* by: *George Pike, Jr.,* for appellants.

*Murphy, Blair, Post & Stroud,* by: *Robert D. Stroud,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants contend that there is no substantial evidence to support the Workmen's Compensation Commission finding that appellee James Phillip Crouch suffered a compensable injury arising out of and in the course of his employment with Crouch Funeral Home, Inc. We agree, reverse the award and dismiss the claim.

Appellee is a licensed mortician employed by the corporation which was owned by appellee, his mother and his brother, except for a 10% interest owned by an employee, John W. Baker, who is not related to the Crouches. Appellee was vice-president of the corporation. His duties included direction of funerals, embalming and many menial duties, which included stamping envelopes, washing funeral cars and sweeping the parking lot. His mother, Mrs. Frances Crouch, was the president of the corporation and manger of

its funeral home, which was located at Batesville. All employees, except corporation officers, worked and were paid on an hourly basis. All had a work schedule and were paid each Saturday by Mrs. Crouch, who was the only person who knew the rate of pay of each employee. She was also the only person who was authorized to sign checks for the corporation. She kept the payroll records under lock and key in her office and no one else had access to them. A bookkeeper had authority to prepare checks for the payment of bills, but not to sign them.

On or about March 4, 1975, Mrs. Crouch left Batesville on a purely personal trip to visit her son in Philadelphia. She planned to return to Batesville on March 14. Before she left she prepared payroll checks based on a forty-hour week for delivery to the employees on March 8, 1975. Her expected date of return was posted on the bulletin board on which the employee work schedule was posted. She flew to Philadelphia from the Memphis airport and returned to that airport as scheduled. She left no instructions for anyone to meet her at the airport. On previous occasions, she had been met at the Memphis airport upon her return from such vacation trips by members of her family, who returned her to Batesville in their own private automobiles. On other such occasions, she had been met and returned in company automobiles by company employees, who were paid by the company for the time required. At least two of these employees were paid hourly wages for the time spent on these trips. Mrs. Crouch compensated family members who made such trips from her personal funds. On some occasions company employees had taken her to her destination on such trips.

Appellee arose at 5:00 a.m. on March 14. He found snow on the ground, and put chains on two of the company vehicles, which were then taken by two company employees to Mountain View. After doing some paper work and shoveling some snow around the funeral home, appellee picked up three friends and drove to Memphis in a 1971 Cadillac automobile owned by the corporation and used as a "family" car for the transportation of families of deceased persons whose funerals were conducted by the company, but when not being so used, Mrs. Crouch used it whenever she wished

for either business or personal missions. Appellee dropped the friends at their destination in Memphis and went to the airport and picked up his mother. Taking and returning these friends was strictly a personal accommodation unrelated to the corporate business in any way. Appellee then picked up the friends and started toward Batesville. At Fair Oaks, the Crouch vehicle was involved in a collision with another automobile, as a result of which Mrs. Crouch and two of the friends were killed, and appellee suffered the injuries on which his claim is based. It was stipulated that Mrs. Crouch was not within the scope of her employment at the time of the collision.

The commission considered appellee as an employee, rather than as an executive officer, of the corporation for the purposes of this case. We do, too, in the sense that the test of the right to compensation is not the title or the injured party, but the nature and quality of the act he is performing at the time of the injury. See *Brooks* v. *Claywell*, 215 Ark. 913, 224 S.W. 2d 37.

We find no basis for a finding, and the commission did not find, that Mrs. Crouch directed appellee to pick her up at the airport. Neither is there any evidence that she directed or expected any employee of the corporation to do so. Appellee had taken her to the airport when she left for Philadelphia in the same car he was driving when he picked her up upon her return. We find no substantial evidence to support the commission's findings. Cases relied upon by appellee where an employee was directed by his employer, whether related to the employee or not, to perform some personal service to the employer, or for his personal benefit, are not applicable here. There is no basis whatever for a finding that Mrs. Crouch directed her son to meet her and bring her home from the airport or to direct an employee to do so. The idea, that appellee as an officer of the company, directed himself, as an employee, to do so, is too far-fetched to merit serious consideration.

The theory of the commission in this case would be much more easily reached were it not for a combination of factors in this case that readily distinguish it from other

situations in which the accident could reasonably be said to arise out of and in the course of the employment of the injured employee. They are: (1) the family relationship; (2) the absence of any direction or order to the employee to go on this mission; (3) Mrs. Crouch was returning from a personal visit; (4) Mrs. Crouch was not in the scope of her employment; (5) the clear indication that the expectation that she would be met and returned home by a relative, who would be compensated from Mrs. Crouch's personal funds, was at least as great as the expectation that she would be met by an employee; (6) the taking and returning of friends on the trip strictly as a personal favor, without any possible relationship to the company business; (7) the common use of the automobile by Mrs. Crouch for her personal missions.

We know of no case in Arkansas that is applicable to the facts in this case, but are aware of the fact that the weight of authority would support the award in the absence of some of the above factors, particularly the family relationship. Because of these factors, it cannot be said that appellee went on this trip strictly because of his employment, rather than as a personal favor. Thus, many cases which would support an award are inapplicable. The reason for many such holdings is that, whatever the normal course of employment may be, the employer and its supervisory staff have it within their power to enlarge it by assigning tasks outside the usual scope and because the employee runs the risk of being fired if he does not comply. 1 Larson's Workmen's Compensation Law 5-264, § 2740.

The burden was upon appellee to show that his injury arose out of and in the course of his employment. *American Red Cross v. Wilson,* 257 Ark. 647, 519 S.W. 2d 60; *Wilson v. United Auto Workers International Union,* 246 Ark. 1158, 441 S.W. 2d 475; *Hughes v. Hooker Bros. and McKenzie Road Service, Inc.,* 237 Ark. 544, 374 S.W. 2d 355. He could not meet that burden by showing that as a voluntary accommodation to his mother he performed a duty outside the scope of his employment. *Thompson v. George E. Thompson Co.,* 198 Minn. 547, 270 N.W. 594 (1936); *Elliott v. Elliott Bros.,* 165 Tenn. 23, 52 S.W. 2d 144 (1932). See also, *Zenker v. Zenker,* 93 Pa. Super. 255 (1928). In the case at bar, as in those, the family relationship

cannot be ignored, even though, standing alone, it would not justify a denial of compensation, if all other facts clearly indicated that the claimant's injury arose out of and in the course of his employment.

If we followed appellee's theory, virtually any personal service Mrs. Crouch had asked appellee to perform, or any that he had voluntarily assumed for her personal benefit, would have been compensable. We cannot overlook the fact that an insurance carrier is a party to this action and is responsible, along with the corporation, which is not wholly family owned, for the payment of any compensation allowed. It was not the intent of the Workmen's Compensation Law to provide general accident insurance. *Duke* v. *Pekin Wood Products Co.,* 223 Ark. 182, 264 S.W. 2d 834. Therefore, in spite of the liberal construction to be given the act, a compensable injury must be within the course of the claimant's employment, and there is no prima facie presumption that a claim comes within the provisions of the law. *Duke* v. *Pekin Wood Products Co.,* supra. In considering this requirement, it is significant that, under the Workmen's Compensation Act, excluding one whose employment is casual from the definition of employee, our act requires the employment be "not in the course of the trade, business, profession or occupation of his employer." Neither the carrier nor the corporation should be expected to bear the burden of compensating injuries to this employee when the whole errand was so unrelated to and disconnected from the business of the employer and his own employment. See *Zenker* v. *Zenker,* supra. There is no evidence that he had ever previously performed this service for his mother. The fact that it was anticipated that Mrs. Crouch would perform her usual tasks relative to the payroll on the following day does not provide the necessary nexus. The situation would have been the same had she been met by her daughter-in-law driving the latter's own vehicle with the expectation that she would be compensated, as usual, out of Mrs. Crouch's personal funds. This would not make the daughter-in-law an employee of the company, because, to say the least, the employment would have been casual and outside the course of trade, business, profession or occupation of the employer and compensated by a gratuity from the

employer. See *Gibbs* v. *Downs,* 94 Conn. 487, 109 A. 170 (1920).

We are not unaware of the statement by Professor Larson that the employer's "order" need not take the form of an outright command, if, in the circumstances, the employee's impression of what is expected of him in serving the interests of his employer or supervisor may be sufficient to motivate his undertaking the service and bring it within the course of the employment. Another court has properly questioned the appropriateness of the only authority cited as a basis for this statement. *Fremont Indemnity Company* v. *Workers' Compensation Board,* 69 Cal. App. 3rd 170, 137 Cal. Rptr. 847 (1977).[1] An "impression" may be a vague, imprecise and indefinite notion or opinion; indistinct or indefinite belief; fancy; or surmise. See Webster's New International Dictionary, 2d Ed.; Webster's Third New International Dictionary; The Synonym Finder, Rodale (Special Deluxe Edition). This seems to be too frail and flimsy a basis for extension of a course of employment. It certainly is on the record before us.

The judgment is reversed and the claim dismissed.

We agree. HARRIS, C.J., and HOLT and ROY, JJ.

---

[1]The only case cited by the textwriter was *Lowicki* v. *National Sugar Refining Co.,* 281 App. Div. 113, 118 N.Y.S. 2d 86 (1952). In that case the claim was supported by a statutory presumption of coverage. In this case, there is no such presumption.