Shirley BLEVINS, Widow of Roger Blevins, Deceased
*v.* SAFEWAY STORES and Home Insurance Company

CA 88-33                                       757 S.W.2d 569

Court of Appeals of Arkansas
Division I
Opinion delivered October 5, 1988

*Cliff Jackson, P.A.,* for appellant.

*Lovett Law Firm,* by: *Tom F. Lovett,* for appellee.

JOHN E. JENNINGS. Judge. Roger Blevins was a produce buyer for a Little Rock Safeway store. On March 10, 1983, Blevins and Alice Denson, a co-worker, went out to dinner with Quinton Lundberg, a regional produce supervisor. Sometime late that evening, or early the next morning, Blevins was killed in a one vehicle accident. He was found dead in his car at 10:00 a.m. on

March 11. A posthumous blood alcohol test registered .22 percent. The Workers' Compensation Commission denied the claim for benefits filed by the appellant, Mr. Blevins' widow. On appeal, she raises three arguments: (1) that Blevins' death was not "substantially occasioned" by intoxication; (2) that even if his death was caused by intoxication, the appellee should be estopped to assert this defense, and (3) that Blevins' death arose within the scope of his employment. We affirm the Commission's decision.

██ Appellant first argues that Blevins' death was not substantially occasioned by intoxication. Ark. Stat. Ann. § 81-1305 (Repl. 1976) (now Ark. Code Ann. § 11-9-401(a)(2) (1987)) provides that "there shall be no liability for compensation under this Act where the injury or death from injury was substantially occasioned by intoxication of the injured employee. . . ." There is a statutory presumption that the injury did not result from intoxication. Ark. Stat. Ann. § 81-1324 (Repl. 1976) (now Ark. Code Ann. § 11-9-707 (1987)).

█ At the hearing before the ALJ, the appellee asked to be permitted to depose a medical witness to establish the effect of a blood alcohol level of .22 percent. In response, the appellant stipulated that the effect was "bad," that .22 percent is more than double the legal intoxication level, and that it was common knowledge as to the condition of a person having such a blood alcohol level. Ms. Denson, Blevins' co-worker, testified in fair detail about Mr. Blevins' drinking that night, and Mrs. Blevins testified that he invariably came home inebriated after being out in the evening with the produce supervisor. While it is true that there was no direct evidence that Blevins was driving in a dangerous manner on the night of March 10, and there was no eyewitness to the accident, we are persuaded that there was substantial evidence to support the Commission's finding that Mr. Blevins' death was "substantially occasioned" by his intoxication.

Appellant next argues that even if Blevins' death was substantially occasioned by intoxication, the employer is estopped from raising the defense. The courts have taken two basic approaches to this issue. Some have held that the doctrine of estoppel can never bar the employer's assertion of the defense of intoxication. *See Hopper* v. *F.W. Corridori Roofing Co.*, 305

A.2d 309 (Del. 1973); *Smith* v. *Trader's & General Ins. Co.*, 258 S.W.2d 436 (Tex. Civ. App. 1953). This approach has been described as "draconian." *See* 1 A. Larson, *The Law of Workmen's Compensation* § 34.36, n. 51 (1985). Another group of cases hold that an employer may, in appropriate circumstances, be estopped from asserting the defense and that the issue of estoppel is generally one of fact. *See Tate* v. *Industrial Accident Commission*, 261 P.2d 759 (1953); *McCarty v. Workmen's Compensation Appeals Board*, 12 Cal. 3d 677, 527 P.2d 617, 117 Cal. Rptr. 65 (1974); *West Florida Distributors* v. *Laramie*, 438 So.2d 133 (Fla. Dist. Ct. App. 1983).

This court has implied that estoppel may be available to bar the assertion of the defense of intoxication, under appropriate circumstances. *See Davis* v. *C & M Tractor Co.*, 4 Ark. App. 34, 627 S.W.2d 561 (1982); In *Davis* we said:

> The employer testified that while he was aware that appellant drank intoxicants on a regular basis and had done so for the past fifteen years, he had no knowledge of how much he drank and had never seen him so influenced by alcohol that he could not perform his duties satisfactorily or drive and control a vehicle. He had no knowledge that appellant was intoxicated on the date of the accident or at the time the accident occurred. Reviewing the testimony most favorable to the finding of the Commission, the Commission could, and did find that the employer did not know that appellant was intoxicated on the date of the accident and has no knowledge of his having previously consumed alcohol to such an extent as to affect his driving or ability to perform fully all of his duties satisfactorily. There was no evidence that the employer participated in any drinking sprees or that he knowingly permitted the appellant to continue to work in an intoxicated condition. Mere knowledge of his propensity to consume alcohol does not, in our opinion, estop the employer from raising the defense of intoxication under the circumstances presented by this record.

At the hearing in the case at bar, Mrs. Blevins testified that, at one time, she had been a produce buyer for Safeway. She said that the regional manager would come to town three or four times

a year and that it was customary for the produce buyer to pick him up at the airport and spend time with him afterwards. Quinton Lundberg had been her husband's supervisor for approximately five years. She testified that there were usually dinner meetings after work, that business was usually discussed at those meetings and that there was always drinking involved. Sometimes she went with her husband to these dinners and sometimes she did not. She said that when she did not go with him, Mr. Blevins invariably came home in an inebriated condition. She testified that it was his custom to drink a six-pack of beer every night. She said that it was her belief that appellee knew of Mr. Blevins' drinking problem because the manager of the McAllen Produce Buying Department had told her that he thought Blevins had a drinking problem some years before. She said that she thought Mr. Blevins was reimbursed for his mileage in taking the manager from place to place. She also testified that the employer did not require the produce buyer to go out to dinner with the supervisor, nor did the employer require that the buyer drink.

Alice Denson was a buyer accountant for Safeway and worked for Mr. Blevins. She testified that she ordinarily went to dinner with Mr. Blevins and Mr. Lundberg when Lundberg was in town. She said that the bill for dinner, including whatever drinks were consumed, was paid sometimes by Mr. Lundberg and sometimes by Mr. Blevins. If Lundberg paid the bill it would be charged back to Safeway on his expense account. She testified that there was no requirement that either she or Mr. Blevins go out to dinner with the regional manager.

Ms. Denson said that on March 10, 1983, they closed the office at 4:30 and went to Mr. Lundberg's hotel room. She, Blevins, and Lundberg had a couple of drinks there. Sometime after 6:00 p.m. they went to dinner at the Sir Loin's Inn in North Little Rock. They all had appetizers and a few more drinks before dinner. She testified that while she and Mr. Lundberg had wine with their dinner she wasn't sure that Mr. Blevins did. Ms. Denson said that they each had an after-dinner drink. She testified that Blevins and Lundberg followed her home to make certain that she got there safely, and that when they left her at around 10:15 p.m., she had no indication that Blevins was intoxicated. She also said that Lundberg told her the next morning that he and Blevins had gone back to the bar and had "a

couple more drinks" before Blevins left.

John Guy was the Safeway employee who replaced Mr. Blevins as produce buyer. He testified that he would routinely go to dinner with the regional manager when he came to town, but that there was no Safeway policy that required buyers to go to dinner with regional managers. He also said that there was no requirement that they have drinks at dinner and that he, in fact, did not drink at all.

The question of whether an employer is estopped to raise the defense of intoxication will depend on the particular circumstances of the case. *See, e.g., Davis* v. *C & M Tractor Co.,* 4 Ark. App. 34, 627 S.W.2d 561 (1982); *West Florida Distributors* v. *Laramie,* 438 So.2d 133 (Fla. Dist. Ct. App. 1983). Estoppel is ordinarily an issue of fact. *State* v. *Industrial Acc. Commission,* 261 P.2d 759 (1953). In workers' compensation cases, the Commission functions as the trier of fact. On appeal to this court, the question is whether the Commission's findings are supported by substantial evidence. *DeBoard* v. *Colson Co.,* 20 Ark. App. 166, 725 S.W.2d 857 (1987). On appeal, we must view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the Commission's actions. *See McCollum* v. *Rogers,* 238 Ark. 499, 382 S.W.2d 892 (1964). In the case at bar, we hold only that the Commission's finding that the employer was not estopped to assert the defense of intoxication is supported by substantial evidence. Because we hold that the Commission did not err in finding that the claim was barred by the defense of intoxication, we need not reach appellant's final argument.

Affirmed.

CORBIN, C.J., and CRACRAFT, J., agree.