FRANKLIN COLLIER FARMS and Grain Dealers Mutual Insurance Company *v.* Earnestine BULLARD, Widow of John Bullard, Deceased

CA 90-221                                      800 S.W.2d 438

Court of Appeals of Arkansas
Division II
Opinion delivered December 19, 1990

34

*Boswell, Tucker & Brewster*, by: *W. Lee Tucker*, for appellants.

*Winfred A. Trafford*, for appellee.

JOHN E. JENNINGS, Judge. Franklin Collier Farms has a large farming operation in eastern Arkansas. John Bullard was the farm manager of the farm located at Moscow, Arkansas. On August 10, 1985, Bullard was killed when his airplane crashed in a soybean field on the farm. The Commission awarded death benefits to his widow, Earnestine Bullard. The argument on appeal is that the Commission's finding that Bullard's death arose out of and in the course of his employment is not supported by substantial evidence. We affirm the Commission's decision.

Eddie Bullard, the deceased's brother, was also employed at the Moscow farm. Since his brother's death, Eddie Bullard has taken his place as farm manager. Eddie Bullard testified that on the morning of August 10, 1985, he and John were cutting corn for shipment to Augusta. That morning John told Eddie that they needed to check some of the soybean fields for certain weeds called "coffee beans." John Bullard's home and a private airstrip were located on the Moscow farm. John owned a plane which he used in connection with his duties as farm manager. These duties included inspecting soybean fields for weeds. Later that day Philip Osterman, Lonnie Kagebin, and Chuck Clayton arrived by plane at the Moscow farm airstrip. Clayton and Kagebin were cropdusters; Osterman was a state policeman. Osterman had previously told the Monroe County Sheriff's Department that he would be flying to check for marijuana that afternoon. After some discussion, the group decided to fly in three planes to Pine Bluff to look at a World War II airplane there. There is no contention that the trip to Pine Bluff to see the airplane was a part of John Bullard's duties as farm manager. Eddie Bullard rode with

Clayton, Kagebin flew by himself, and Osterman flew John Bullard's plane.

After viewing the airplane in Pine Bluff, John Bullard told the others that he was going back to work and the group left Pine Bluff to return to the farm at Moscow. This time John Bullard was in the front seat of his own airplane with Osterman in the back, and according to Eddie Bullard's testimony, John was flying the plane. As the three planes neared the farm airstrip, John Bullard's plane veered off from the others and flew "telephone pole high" over some low lying areas of the fields which he had intended to check for coffee beans. His plane crashed in a soybean field located approximately in the middle of the Moscow farm.

It was undisputed that the employer furnished fuel for the plane. Eddie testified that John was a conscientious farm manager and had a habit of flying over and inspecting the farm each time he flew back.

Mr. Franklin Collier testified that John Bullard was on the job on the day of his death. He said that John Bullard had told him that day that he was going to check some of the soybean fields for coffee beans to see if they needed spraying and that Bullard checked the fields with both his airplane and his truck. He also testified that the field in which Bullard's plane crashed was one of the fields he would have been checking for coffee beans.

Appellant correctly notes that it was the appellee's burden to prove that the accident arose out of and in the course of employment. *Woodard* v. *White Spot Cafe*, 30 Ark. App. 221, 785 S.W.2d 54 (1990). When the Commission makes such a finding, the question on appeal is whether the Commission's decision is supported by substantial evidence. The issue of substantial evidence is, as appellant contends, one of law. *See Fuller* v. *Johnson*, 301 Ark. 14, 781 S.W.2d 463 (1989). In determining whether the Commission's findings are supported by substantial evidence, we are obliged to view the evidence in the light most favorable to those findings and give the testimony its strongest probative force in favor of the Commission's action. *Blevins* v. *Safeway Stores*, 25 Ark. App. 297, 757 S.W.2d 569 (1988). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclu-

sion. *College Club Dairy* v. *Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). We do not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

■ While it is true that conjecture and speculation cannot take the place of credible evidence, it is equally true that the Commission has the right to consider all circumstances and proven facts and to draw all reasonable inferences deducible therefrom. *See Wilson* v. *United Auto Workers*, 246 Ark. 1158, 441 S.W.2d 475 (1969). The Arkansas Supreme Court has said that circumstantial evidence is sufficient to support an award and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; neither absolute certainty nor demonstration is required. *Herron Lumber Co.* v. *Neal*, 205 Ark. 1093, 172 S.W.2d 252 (1943).

Appellant argues that the case at bar ought to be analyzed under the "dual purpose" trip doctrine. *See, generally, Rankin* v. *Rankin Construction Co.*, 12 Ark. App. 1, 669 S.W.2d 911 (1984). In *Rankin* we quoted with approval from 1 A. Larson, *The Law of Workmen's Compensation* § 18.00 (1982):

> Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey.

■ We cannot agree that the "dual purpose" doctrine is applicable. In *J&G Cabinets* v. *Hennington*, 269 Ark. 789, 600 S.W.2d 916 (Ark. App. 1980), we said:

> The phrase "arising out of the employment" refers to the origin or cause of the accident and the phrase "in the course of the employment" refers to the time, place, and circumstances under which the injury occurred. In order for an injury to arise out of the employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks.

(Citation omitted.)

■ ʼIf we assume in the case at bar that John Bullard's trip to Pine Bluff was of a purely personal nature, the undisputed evidence is that at the time of his fatal accident he had returned to the farm. Furthermore the Commission could reasonably infer from the evidence that, at the time of the crash, Bullard was inspecting soybean fields for coffee beans, which was one of the duties of his employment. While it is true that no one can be absolutely certain what John Bullard was doing at the time of his death, absolute certainty is not required. *See Herron Lumber Co., supra.* The inference that he had gone back to work at the time of his death was a reasonable one — one which the Commission was entitled to draw. We therefore hold that the Commission's decision was supported by substantial evidence.

Affirmed.

CORBIN, C.J., and COOPER, J., agree.