ARKANSAS DEPARTMENT OF CORRECTION, et al.
*v.* Tammy E. GLOVER

CA 90-356                                812 S.W.2d 692

Court of Appeals of Arkansas
En Banc
Opinion delivered June 26, 1991

*Frank Gobell*, for appellants.

*Hunt & Kelly*, by: *Eugene Hunt* and *Lisa A. Kelly*, for appellee.

ELIZABETH W. DANIELSON, Judge. Appellants appeal from the full commission's award of benefits to appellee Tammy Glover following the death of her husband, Lois Glover. Because we agree with appellants' contention that there is not substantial evidence to support the commission's finding that Glover's death

arose out of and in the course of employment, we reverse.

■■ A claimant seeking benefits before the Workers' Compensation Commission must prove by a preponderance of the evidence that the injury or death arose out of and in the course of the employment. *J & G Cabinets* v. *Hennington*, 269 Ark. 789, 600 S.W.2d 916 (1980); *Morrow* v. *Mulberry Lumber Co.*, 5 Ark. App. 260, 635 S.W.2d 283 (1982). "Arising out of the employment" refers to the origin or cause of the accident. In order for an injury to arise out of the employment, it must be a natural and probable consequence or incident of the employment and a natural result of one of its risks. *J & G Cabinets*, 269 Ark. 789, 600 S.W.2d 916. "In the course of the employment" refers to the time, place, and circumstances under which the injury occurred. *Gerber Products* v. *McDonald*, 15 Ark. App. 226, 691 S.W.2d 882 (1985). The court in *Howard* v. *Arkansas Power & Light Co.*, 20 Ark. App. 98, 724 S.W.2d 193 (1987), notes that Larson's formulation for the test for course of employment requires that the injury occur within the time and space boundaries of the employment, while the employee is carrying out the employer's purpose or advancing the employer's interests directly or indirectly.

At the time of his death on January 4, 1988, Lois Glover was an employee of appellant Arkansas Department of Correction. Glover reported to work that morning for a shift that began at 6:15 a.m. and was scheduled to end at 6:30 p.m. At approximately 3:45 p.m., Glover was released from work by his supervisor, Lieutenant Mixon, at the request of Lieutenant Spradlin, a Department of Correction officer who was superior in rank to Glover, but who was not Glover's supervisor. Spradlin had requested that Glover be released in order to help him with a personal errand; there was differing testimony as to the purpose of the errand, but no contention that they were engaged in any work-related business. After Spradlin picked up Glover in his vehicle, the two men began riding around and drinking beer. Spradlin was intoxicated at the time he picked up Glover, and Glover was subsequently killed in an accident in which Spradlin was driving.

■■ For an accident to be compensable, there must be a causal connection between the accident and a risk that is reasonably incident to the employment, and that connection

cannot be supplied by speculation. *Gerber Products*, 15 Ark. App. 226, 691 S.W.2d 882. Employment is not limited to that which the person was actually hired to do; whatever the normal course of employment may be, the employer and its supervisory staff have it within their power to enlarge the course of the employment by assigning tasks outside the usual scope of the employment. *See Crouch Funeral Home* v. *Crouch*, 262 Ark. 417, 557 S.W.2d 392 (1977); *Edwards* v. *Johnson*, 227 Ark. 345, 298 S.W.2d 336 (1957). However, the court in *Crouch* dismissed the proposition that an order directing an employee to do something outside the usual scope of the employment need not take the form of an outright command if the employee has the impression the task was expected of him or that it would be in his best interest to perform it; the court stated that this seemed to be too frail and flimsy a basis for extension of a course of employment.

Although the commission should construe the provisions of the workers' compensation act liberally, *see* Act 10 of the Second Extraordinary Session of 1986, there is no presumption that an injury arose out of and in the course of employment, and the claimant has the burden of establishing his claim by a preponderance of the evidence. *Howard* v. *Arkansas Power & Light Co.*, 20 Ark. App. 98, 724 S.W.2d 193 (1987); *Central Maloney, Inc.* v. *York*, 10 Ark. App. 254, 663 S.W.2d 196 (1984).

The administrative law judge and the full commission found that it was the practice of higher ranking correction officers to use lower ranking officers to assist them with personal errands; that lower ranking officers perceived performing these personal errands as a means of rapid career advancement; that the venture engaged in on January 4, 1988, while personal in nature to Spradlin, was not personal to Glover, who was a passenger in a vehicle driven by a supervisor over whom he had no control; and that the accident therefore arose out of and in the course of his employment. We hold there was not substantial evidence to support these findings.

The evidence reflects that before Lt. Spradlin called Lt. Mixon requesting that Glover be released, he had called Glover to see if he wanted to leave work early and accompany Spradlin. Spradlin and Glover had been friends in high school, and though

they had not socialized since that time, they had begun to renew their friendship since Glover had started work with the Department of Correction, and spoke with each other on a daily basis.

On the day of the accident, Spradlin was off duty. Mixon testified that Spradlin told him he needed Glover to go with him because he needed some money and Glover was the only one who could get it. When Mixon told Glover he was being logged off duty, Glover responded that he already knew about it. Spradlin testified that he wanted Glover to help him load his four-wheeler. He testified that when he picked up Glover, he asked him if he wanted to load the four-wheeler first or drink beer first and Glover replied he wanted to drink beer first. Spradlin testified that he did not have any authority over Glover that day, and that he didn't necessarily expect Glover to agree to help him because he was a superior officer, but because they were friends.

In *Crouch*, 262 Ark. 417, 557 S.W.2d 392, the supreme court reversed a finding that an injury arose out of and in the course of employment where the claimant had suffered injuries in an accident on a return trip from the airport, where he had voluntarily gone to pick up his mother, the president of the company for which he worked. Among other factors considered by the court were the facts that there was no evidence the claimant had ever previously performed this service; there was no direction or order for the employee to go on this mission; and the claimant's mother had been on a personal visit and was not acting in the scope of her employment.

█ The findings of the commission must be upheld unless there is no substantial evidence to support them. *Scarbrough* v. *Cherokee Enterprises*, 33 Ark. App. 139, 803 S.W.2d 561 (1991). Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Id.*; *Pickens-Bond Constr. Co.* v. *Case*, 266 Ark. 323, 584 S.W.2d 21 (1979).

█ The evidence in this case does not support a finding that Glover's accident arose out of and in the course of his employment. Instead, it shows that two friends, one of whom happened to be a superior-ranking officer, decided to spend the afternoon drinking beer and perhaps taking care of some personal business. There is no substantial evidence to support a finding that Glover

felt obligated to assist a superior ranking officer. Such a finding would be based on conjecture and speculation. Conjecture and speculation, even if plausible, cannot take the place of proof. *Dena Constr. Co.* v. *Herndon*, 264 Ark. 791, 575 S.W.2d 155 (1979).

■   An employer should not be expected to bear the burden of compensating injuries to the employee when the whole errand is unrelated to and disconnected from the employment. *Crouch*, 262 Ark. 417, 557 S.W.2d 392. Accordingly, we reverse the finding of the commission and dismiss the claim.

Reversed and dismissed.

LAWSON CLONINGER, Special Judge, agrees.

JENNINGS and MAYFIELD, JJ., dissent.

ROGERS, J., not participating.

JOHN E. JENNINGS, Judge, dissenting. In my view the majority loses sight of our standard of review in making its determination that the Commission's decision is not supported by substantial evidence. In workers' compensation cases, the Commission, and not this court, functions as the trier of fact. *See Blevins* v. *Safeway Stores*, 25 Ark. App. 297, 757 S.W.2d 569 (1988). In determining whether the Commission's findings are supported by substantial evidence, we are obliged to view the evidence in the light most favorable to those findings and give the testimony its strongest probative force in favor of the Commission's action. *Blevins* v. *Safeway Stores*, 25 Ark. App. 297, 757 S.W.2d 569 (1988). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *College Club Dairy* v. *Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). We do not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Silvicraft, Inc.* v. *Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. *Bearden Lumber Co.* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). The Commission's decision is entitled to the weight we give a jury verdict. *Marrable* v. *Southern LP Gas, Inc.*, 25 Ark. App. 1, 751

S.W.2d 15 (1988).

The credibility of witnesses and any conflict and inconsistency in the evidence is for the Commission, as the trier of fact, to resolve. While it is true that conjecture and speculation cannot take the place of credible evidence, it is equally true that the Commission has the right to consider all of the facts and circumstances of the case and to draw all reasonable inferences deducible from them. *Franklin Collier Farms* v. *Bullard*, 33 Ark. App. 33, 800 S.W.2d 438 (1990). Circumstantial evidence is sufficient to support an award and it may be based upon the reasonable inferences that arise from the reasonable probabilities flowing from the evidence; neither absolute certainty nor demonstration is required. *Herron Lumber Co.* v. *Neal*, 205 Ark. 1093, 172 S.W.2d 252 (1943).

The majority finds no substantial evidence to support the Commission's finding that it was the practice of higher ranking correction officers to use lower ranking officers to assist them with personal errands. Kenneth Luckett, the correction officer sent by Captain Mixon to relieve Lois Glover, testified that he had been relieved on a number of occasions at the order of a superior officer, that he would do whatever the officer told him to do, and that this was just "part of the way you go up in the system." Calvin Spradlin, who had worked for the department for six years prior to his resignation in 1988, testified that it was the "standing practice" at the department for an officer to be relieved from duty to run errands for superior officers.

The majority also holds that the Commission's finding that lower ranking officers perceived performing these personal errands as a means of rapid career advancement is not supported by substantial evidence. Again, Luckett testified that being relieved from duty to do something for a superior officer was part of the way one advanced in the system. Spradlin testified that he knew that doing things that were not within "the line of duty" was in his career interest and that it was his perception that that was how one moved up in the system.

The court also finds no substantial evidence to support the Commission's finding that the venture engaged in on January 4, 1988, was not personal to Lois Glover, who was a passenger in a vehicle driven by a supervisor, Spradlin, over whom Glover had

no control. The majority states that the evidence shows only "that two friends, one of whom happened to be a superior ranking officer, *decided* to spend the afternoon drinking beer and perhaps taking care of some personal business." (Emphasis added.) Captain Mixon testified that he made the decision to relieve Lois Glover at the request of Lieutenant Spradlin. There was no evidence that Glover asked Mixon to be relieved. It was Mixon's recollection that Spradlin told him he needed Glover to go with him to get some money. Spradlin's recollection was that he told Mixon he needed Glover to help him load a four-wheeler. In any event, Luckett testified that Mixon gave him a direct order to go relieve Glover at "Ten Barracks." When Luckett arrived there he told Glover that Mixon wanted to see him in the East Hall, a command post. Although Mixon originally testified that he knew Glover had some time off coming, he subsequently admitted on further examination by appellee's attorney that, in fact, he did not know whether Glover had any time coming or not.

Although the majority concedes that Spradlin and Glover had not seen each other socially since high school, it states that "they had begun to renew their friendship" since Glover started work at the Department of Correction. When the testimony of Spradlin in this regard is read in context, it is clear that the "renewal of the friendship" consisted merely of the two men speaking to each other when they were on the same shift at work.

The majority states that on the day of the accident Spradlin was off duty. Spradlin, however, testified that as an officer living on the department grounds, he was on duty twenty-four hours a day. The majority states that Spradlin "testified that when he picked up Glover, he asked him if he wanted to load the four-wheeler first or drink beer first and Glover replied he wanted to drink beer first." In the first place, Spradlin's testimony was that he asked Glover if he wanted to go *get* the beer before they unloaded the four-wheeler and that Glover said "let's go get the beer." Second, the Commission was not obligated to believe this testimony. Spradlin, by his own admission, was intoxicated at the time he picked Glover up. Furthermore, the Commission may believe part of a witness's testimony and reject other parts. This is a traditional function of the trier of fact. *See Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989). Finally, it might be observed that according to Spradlin, although the beer they

bought was his (Spradlin's) brand, Glover had to pay for it because Spradlin had no money.

Although I would concede that the decision in *Crouch Funeral Home, Inc.* v. *Crouch*, 262 Ark. 417, 557 S.W.2d 392 (1977), may be open to differing interpretations, I do not agree that that decision suggests that the Commission was wrong in awarding compensation here.

With due respect to the majority, it seems to sift the evidence, picking out that testimony which supports the result it believes the Commission should have reached, and forgetting that it is the Commission and not this court which makes decisions on credibility.

Lois Glover was not available to testify at the hearing and the appellee had to try to make her case, for the most part, through reluctant witnesses employed by the Department of Correction, the opposing party. The Commission found that she made her case, and in my view that conclusion is supported by substantial evidence.

I respectfully dissent.

MAYFIELD, J., joins.