Earnest Dale LOHMAN  *v.*  SSI, INC.
& Villanova Insurance Company

CA 05-1044                                          232 S.W.3d 487

Court of Appeals of Arkansas
Opinion delivered March 15, 2006

*Walker, Shock, Cox & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Carol Lockard Worley* and *Melissa Ross*, for appellees.

Sam Bird, Judge. This workers' compensation claim involves a claim for permanent partial disability benefits in excess of permanent physical impairment. Appellant, Earnest Dale Lohman, suffered multiple injuries in a job-related accident on April 16, 2001, when he was working for appellee SSI, Inc., and fell twenty feet from a roof to the ground. The next day he underwent surgery consisting of an anterior cervical fusion with internal and external fixation, and several weeks later a posterior fusion with internal

fixation was performed on the same area. Lohman continued to see other doctors and to receive prescriptive pain medication after his surgeon released him from care and after a permanent physical impairment rating of fifteen percent was accepted by SSI and appellee Villanova Insurance Company. He also underwent a social-security evaluation and several rehabilitation evaluations by specialists hired by appellees.

At a July 12, 2004, hearing before an administrative law judge, the parties stipulated that Lohman had suffered compensable injuries on April 16, 2001; that appellees had accepted and were paying permanent partial disability benefits based upon a fifteen-percent rating; and that appellees had refused a request of May 14, 2003, to provide Lohman with a psychological evaluation and/or treatment. The only issue before the law judge was the extent of Lohman's permanent disability benefits. Lohman contended that he was entitled to permanent disability greatly in excess of his fifteen-percent impairment rating, while appellees contended that he was barred from benefits beyond the rating because he did not cooperate with assistance in job placement. The law judge found that Lohman had met his burden of proof to show entitlement to permanent partial disability benefits in the amount of a sixty-percent wage loss disability.

The Workers' Compensation Commission reversed the law judge's opinion in a decision of June 2, 2005, finding that Lohman refused to participate in or cooperate with an offered program of rehabilitation and job-placement assistance. Therefore, the Commission concluded that, under Ark. Code Ann. § 11-9-505(b)(3), Lohman was not entitled to permanent partial disability benefits in excess of his permanent physical impairment. Lohman contends on appeal that no substantial evidence supports the Commission's finding that he refused to participate in or cooperate with an offered program of rehabilitation and job-placement assistance. We agree, and we reverse and remand for a determination of permanent disability benefits.

Arkansas Code Annotated section 11-9-505(e) (Repl. 2002), entitled "Additional compensation — Rehabilitation," states:

> The employee shall not be required to enter any program of vocational rehabilitation against his or her consent; however, no employee who waives rehabilitation or refuses to participate in or cooperate for reasonable cause with either an offered program of

rehabilitation or job placement assistance shall be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by objective physical findings.

The Commission has the authority under this statute to increase a disability rating when the claimant has been assigned an anatomical-impairment rating to the body as a whole, and the Commission can find a claimant permanently disabled based upon wage-loss factors. *Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Id.*

The evidence at the hearing included medical reports, vocational rehabilitation reports, Lohman's testimony, and testimony by Terry Owens, a vocational rehabilitation consultant. The Commission evaluated the evidence as follows to support its finding that Lohman refused to participate in or cooperate with an offered program of vocational rehabilitation:

> Based on our review of the record, the Full Commission is unable to determine that the claimant's refusal to participate in vocational rehabilitation had anything to do with mental depression or addiction to prescribed medication. The claimant just chose not to participate. We recognize that a psychologist diagnosed depression in April 2003. The claimant does not contend, however, that he sustained a compensable mental injury or illness pursuant to Ark. Code Ann. § 11-9-113. In May 2003, Dr. Short noted a diagnosis of "opiate withdrawal" and opted not to continue to treat the claimant "because of his continued misuse of pain medicines for his chronic pain situation after his industrial injury." In June 2003, Dr. Shahim stated that the claimant could return to light-duty work for at least three months.
>
> The claimant began seeing another physician, Dr. Howell, in June 2003. Dr. Howell wrote that the claimant's medication regimen had "fairly well controlled his pain .... He reports that since he has been on his current regimen he has increased his physical activities. He goes for walks, etc. He also suffers from chronic anxiety disorder." The evidence demonstrates, therefore, that the claimant was physically able to return to gainful employment at that time.
>
> After the claimant contended that he was entitled to permanent partial disability in excess of his anatomical impairment rating, the

claimant began consulting with Terry Owens of Rehabilitation Management in October 2003. Ms. Owens arranged (1) physical therapy; (2) adult education; and (3) job placement assistance. By December 2003, Ms. Owens was forced to note that the claimant "has no true intentions of following through with vocational assistance." Ms. Owens' notes do not indicate, nor does any other evidence in the record show, that the claimant was depressed to the point that he could not participate in vocational rehabilitation.

Lohman argues on appeal that appellees' offer of a vocational-rehabilitation program was not a bona fide offer because, despite knowing that he had major depression, they did not provide psychological help to him. Appellees argue that Lohman was barred from receiving any permanent disability benefits because he had no reasonable cause for his refusal of vocational training and the plan provided to him.

The findings of the Commission will be upheld unless there is no substantial evidence to support them. *Ark. Dep't of Correction v. Glover*, 35 Ark. App. 32, 812 S.W.2d 692 (1991). Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark. App. 13, 45 S.W.3d 396 (2001). Conjecture and speculation, even if plausible, cannot take the place of proof. *Glover, supra*. While the appellate court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses, the Commission may not disregard testimony, and it is not so insulated as to render appellate review meaningless. *Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

Lohman asserts that he cooperated with vocational consultant Dale Thomas, and that his (Lohman's) medical condition deteriorated after working with Thomas. Lohman notes information included in Thomas's report of March 28, 2002, that Lohman had started an active job search based on job leads provided by Thomas, had registered with the Employment Security Department, and had been sent on one interview. As evidence that he did not refuse to cooperate with the vocational consultant, Lohman points to Thomas's statement that he was "encouraged by Mr. Lohman's motivation to seek employment."

Lohman testified that he "was doing pretty good" when Thomas was working with him. Lohman stated that "somewhere around in there . . . I got in with [Dr.] Short and I was taking that

OxyContin, it was like . . . a wonder drug." Lohman testified that after three months of taking six a day, he would run out and had withdrawals "so bad that I wanted to go outside where my kids wouldn't find me and put a cap in my head. When I say put a cap in my head, I mean shoot myself."

Dr. Bradley Short, who reviewed Lohman's medical records and performed a physical examination of him on June 6, 2002, reported that Lohman's doctor at the time was unwilling to continue him on OxyContin, which Lohman said was helpful for his pain. Dr. Short wrote:

> [W]e will start him on pain medicines and copies of his prescriptions are in his chart. He does appear to be profoundly depressed. I offered to start him on Prozac 90mg a week. We will see him back after he has his functional capacity evaluation.

On a return visit of July 2, 2002, Dr. Short wrote that Lohman reported increased pain and reported that the Prozac had not really helped. Dr. Short changed the medications at that time. Three weeks later Dr. Short wrote that Lohman had run out of OxyContin after increasing his dosage on his own, that Lohman reported being more functional with the increased dosage, that Dr. Short therefore increased the OxyContin and Roxicodone, and that Lohman was still taking Celexa. Lohman again had run out of his medicines when he returned to Dr. Short on September 10, 2002. Dr. Short talked to him at length about his medicine usage, which Lohman said was effective for his pain. Dr. Short referred Lohman to a psychologist, Dr. Bier, about the matter. There is no record of any visit with Dr. Bier, however, and Dr. Short's reports through the end of the year show that he continued to see Lohman and prescribe his medications.

Neuropsychologist Patricia J. Walz, Ph.D., who evaluated Lohman in April 2003 in connection with his application for social security benefits, opined that Lohman appeared to have put forth a decent effort and that his test results were valid. She noted that he was a thirty-seven-year-old divorcee raising three children (with help from his ex-wife's mother), that his relevant work had been construction, that he said he was not a high school graduate, and that he said he could read most words in the newspaper but was not very good at arithmetic. She wrote that when he was asked about mental health problems, he responded that he "fell into a deep depression. He used to work all the time and couldn't stand the thought that he couldn't do anything." Dr. Walz noted that he had

not received psychiatric hospitalization, nor had he participated in counseling or psychotherapy. Her summary of the testing and evaluation includes the following:

> [He] reports chronic depression with vegetative symptoms including poor concentration, impaired sleep and appetite, and low energy. He also reports feeling despondent and useless. He appears to have an agitated, edgy type of depression in which he worries excessively and doesn't really feel he has much control over his worry. This depression is severe enough to interfere with his ability to function on the job in that it would interfere with his concentration and attention and his irritability could interfere with his relationships with peers, supervisors and the public.

> Diagnostic Impression:

> Axis I: Major depression, Recurrent, Moderate without Psychosis
> Somatoform Pain Disorder

> Axis II: Borderline Intellectual Functioning.

At the hearing before the administrative law judge, appellees stipulated that "they were in fact requested on May 14, 2003, to provide a psychological evaluation and/or psychological treatment pursuant to the recommendation of Dr. Walz and that they did not do so."

Appellees referred Lohman to vocational specialist Terry Owens in September 2003, after Dr. Short had recommended the involvement of a psychologist and Dr. Walz had given the diagnosis of major depression. Owens testified that she met Lohman in October 2003 and had no opportunity to test him, but she interviewed him and read his records. She said that her impression when she first interviewed Lohman was that he wanted to get better and wanted to look for work, and that he worked with people trying to get a job but had fears of not being able to keep a possible job because of his physical abilities.

Owens testified that she sent Lohman a list of jobs she had found through labor-market research. She testified that Lohman went to only the first session of physical therapy that she set up for him pursuant to his request, and that he did not go to a meeting she set up at the Adult Education Center, which helps individuals learn skills to get jobs in their communities. She opined that Lohman eventually would have been capable of sedentary to light work.

Owens testified that she closed her file on Lohman after the insurance company told her that she should not continue services because he had not followed through on opportunities he had been given to participate in vocational rehabilitation and physical therapy. Owens stated, "I feel that I gave him ample opportunity." She said that Lohman left her a voice mail after she closed his file, apologizing greatly and indicating "that he had a hard time and he was really trying and he wanted another chance." She said that she reported this information to the insurance carrier, but their response was that no further services would be provided. She further testified:

> I have worked with clients who have been diagnosed as having major depression. Generally, major depression decreased one's incentive or motivation. They are so depressed they don't have the ability to initiate an activity. . . .

> As a vocational expert, if somebody approached me and asked me to help place someone and you knew that person had a current diagnosis of major depression, I would more than likely recommend that the depression be treated before I try to place them.

> If the depression is being treated and it is still exhibiting in the moderate to severe [range], then the treatment needs to be looked at to consider if there needs to be different medications, more medications, or some other psychotherapy going on in conjunction with that before they are really able to work with you and to follow through with the things you need to do.

### Sufficiency of the Evidence

The issue before us is the sufficiency of the evidence to support the Commission's determination that Lohman refused to participate in or cooperate with an offered program of rehabilitation and job-placement assistance. We hold that no substantial evidence supports this finding.

Vocational consultant Dale Thomas reported that Lohman was motivated to seek employment in March 2002. Lohman testified that he was taking the "wonder drug" OxyContin for his pain, but that his withdrawals became so bad when he ran out of it that he wanted to shoot himself. Dr. Short reported that Lohman was profoundly depressed in June 2002, and Dr. Walz diagnosed him with major depression in April 2003. These diagnoses were a

part of the record before appellees sent Lohman to Terry Owens for further vocational evaluation. Owens's first impression of Lohman was that he wanted to get better and look for work but had fears of his physical ability. The Commission, focusing on the lack of a claim for compensable mental injury or illness, failed to acknowledge Owens's testimony that a person with major depression should be treated before she would try to place the person in a job.

■ We hold that reasonable minds could not conclude that Lohman refused to participate in or cooperate with an offered program of rehabilitation and job-placement assistance, particularly in light of appellees' refusal to provide psychological assistance that their own witness said was necessary in order for her vocational rehabilitation services to be meaningful. Therefore, his claim was not barred by Ark. Code Ann. § 11-9-505(e). We reverse and remand this case for the Commission to determine whether Lohman was entitled to permanent partial benefits in excess of the percentage of his permanent physical impairment.

Reversed and remanded.

GLOVER and CRABTREE, JJ., agree.