Erma SMITH, Appellant

v.

SOUTHWEST ARKANSAS FOOD BANK and Chartis Insurance, Appellees.

No. CA 10–854.

Court of Appeals of Arkansas.

March 2, 2011.

Steven R. McNeely, Little Rock, for appellant.

Melissa Faye Wood, Little Rock, for appellee.

WAYMOND M. BROWN, Judge.

On June 16, 2007, Erma Smith suffered an admittedly compensable knee injury while working for Southwest Arkansas Food Bank (AFB). The injury occurred when Smith was attempting to lift a heavy box from a pallet. AFB accepted the injury as compensable and paid all costs associated with that injury, including a two percent impairment rating. Smith sought additional medical benefits for a lower back injury she claimed to have also suffered on June 16, 2007. AFB controverted Smith's claim for additional benefits, and Smith filed a complaint with the administrative law judge (ALJ). The ALJ issued an opinion denying Smith benefits for her lower back on December 29, 2009. Smith appealed that decision to the Arkansas Workers' Compensation Commission (Commission). The Commission affirmed and adopted the decision of the ALJ. Smith appeals the Commission's denial of benefits, claiming that the Commission arbitrarily disregarded the opinion of Dr. Bryan McDonnell. We find no error and affirm.

Smith began volunteering at AFB in 1984. She was later offered full-time employment. On June 16, 2007, Smith was the director of AFB, and her job duties included loading trucks, driving forklifts, answering the phone, performing office work, and doing payroll. According to Smith, in June 2007 when she attempted to pick up a box, "[her] whole right side just went completely out from under [her], and a sharp pain [went] straight through [her]

knee." Smith testified that the pain went from her hip down. She stated that she started screaming because she did not have "any feeling on the whole right side."

Smith received treatment from her family doctor, Dr. Bryan McDonnell. She was eventually diagnosed with right knee pain, possible ACL tear. On November 19, 2007, Smith presented to Dr. McDonnell with complaints of "some numbness that seems to wax and wane of the right leg that can radiate from the hip to the knee to the foot." Following this visit, Dr. McDonnell scheduled an MRI of Smith's lumbar spine. The MRI was performed on November 30, 2007. It showed mild spinal stenosis with right-sided neural foraminal narrowing at L3–L4. It also showed bilateral neural foraminal narrowing at L5–S1 secondary to loss of disc height.

Smith was seen by Dr. Janelle Van Zandt, a neurologist, on January 2, 2008. According to the letter Dr. Van Zandt wrote Dr. McDonnell the same day, Smith denied having back pain. Dr. Van Zandt examined Smith and reviewed her November 30, 2007 MRI. Dr. Van Zandt opined that most of Smith's pain was coming from her knee, not her back, and she suggested that Smith be evaluated by an orthopedist.[1]

Smith was examined at Arkansas Specialty Orthopaedics on January 15, 2008. Dr. Charles E. Pearce, Jr.'s notes from that day showed that Smith suffered from right knee pain and possible degenerative arthritis. Dr. Pearce recommended that Smith have an MRI of her right knee. An MRI was performed on Smith's knee on January 24, 2008, which showed a tear in

---

1. Dr. Van Zandt found the MRI of Smith's lumbar spine to be unremarkable, showing only mild foraminal stenosis.

the posterior horn of the medial meniscus. Following the MRI, Dr. Pearce referred Smith to Dr. Reginald Rutherford for evaluation.

Dr. Rutherford performed an EMG on Smith, and according to the report of February 5, 2008, there was no "evidence of nerve root irritation right S1 myotome." Dr. Rutherford opined that surgical intervention and lumbar epidural steroid injections were not warranted.

Smith had surgery on her right knee on March 31, 2008. Dr. Pearce released Smith to work with limitations on April 9, 2008. Smith was released to regular duty on May 6, 2008. On June 3, 2008, Dr. Pearce opined that Smith was at maximum medical improvement and assigned her a two-percent permanent partial impairment. Smith returned to Dr. Pearce on June 26, 2008, complaining of right leg pain. Dr. Pearce opined that Smith's pain was neurologic and referred her for a spine evaluation.

Smith was seen by Dr. Harold Chakales on November 17, 2008. Dr. Chakales diagnosed her with lumbar disc syndrome with foraminal narrowing and chronic nerve root irritation. Dr. Chakales recommended another MRI of Smith's lumbar spine as well as another EMG of her back and legs. The MRI was performed on December 10, 2008, and it showed evidence of spinal stenosis. An EMG performed the same day showed no evidence of "nerve root irritation, peripheral neuropathy or myopathy." Dr. Chakales recommended lumbar myelogram and a CT on January 7, 2009.[2] Smith underwent a lumbar myelogram on June 18, 2009. The test showed severe degenerative disc disease at L4–L5 with bilateral L5 sacralization. Mild impingement and edema were pres-

ent in the right L5 nerve root. The CT lumbar myelogram of June 18, 2009, also showed bilateral L5 sacralization with severe degenerative disc disease at L4–L5. Additionally it showed minimum to mild central canal stenosis at L4–L5 and L2–L3; minimum concentric central stenosis was present at L3–L4.

Smith returned to Dr. McDonnell on July 15, 2009. His notes for that visit stated that he and Smith would discuss potential surgical intervention at Smith's August 17, 2009 visit.[3] Smith saw Dr. McDonnell on October 12, 2009. His notes indicated that Smith was "still having a lot of back pain and sciatica." On October 23, 2009, Dr. McDonnell wrote a letter to Smith's attorney, stating in pertinent part:

As to whether her injuries were work related, I cannot say that they were not. While she had similar complaints in the past, her symptoms were markedly worsened after the work injury. I believe that it is likely that she would not have required treatment at this time if she had not had the work injury.

A hearing on the compensability of Smith's back injury was held on October 30, 2009. Smith testified that she did not realize that her prior back problems were relevant because they never affected her "as far as work or anything." According to Smith, she never had any pain like the pain she experienced on June 16, 2007. She also stated that she was continuously in excruciating pain following her injury. Smith testified that her surgery alleviated all the problems she was having with her right knee. However, she stated that when she returned to work, she began experiencing excruciating pain all over again. She said that she worked for AFB until the last of February 2008, when she left due to her pain. Smith acknowledged

---

**2.** Appellee denied this medical treatment.

**3.** Smith was a "no show" for her August visit, and she missed her September visit, as well.

that prior to her injury in June 2007, she would go to the chiropractor to receive adjustments and massages on her lower back. She testified that since her injury, her pain has been severe and her equilibrium has been off.

On cross-examination, Smith stated that she did not think that she had any severe back problems before her compensable injury. At the hearing, Smith stated that she was currently experiencing pain from her hip area down to her leg. She testified that there are times when she also has pain starting from her mid-back. She said that she continues to cook and clean at home. Smith acknowledged that she sought medical assistance in January 1996, for a lower back strain; that she began treatment with Dr. Clary in December 2003, for scoliosis of her lumbar spine; that she complained about her equilibrium before June 2007; that each time she went to the chiropractor, it was because her back was sore; and that she complained of a sore hip on May 7, 2007. She denied that she told Dr. Van Zandt that she did not have any back pain.

On redirect, Smith stated that before her June 16, 2007 injury, she did not have any problems working due to her back. She said that before the compensable injury, she got relief from the adjustments.

Izard Hunter testified that he had known Smith for a number of years, and had known her from the food bank for over ten years. He stated that he did not notice Smith having any problems working because of her back before June 2007. He testified that Smith periodically gave the people at AFB updates about what was going on with her, but he did not ask her for a whole lot of details. He said that it was his understanding that Smith could no longer work at AFB due to a work-related injury. He also stated that he originally thought Smith's problem was with her back until she had surgery on her knee.

Hunter testified that he did not have any concerns about Smith's motivation or willingness to work.

Randall McClure testified that he was working at AFB on the date Smith injured herself. According to McClure, he heard Smith holler and went to see what was going on. He stated by the time he got to Smith, she was already on her feet but was limping. He testified that Smith was still limping a couple of days following the injury. According to McClure, he "could look at her in the eye and see that she was still in pain." He stated that he did not notice Smith having any problems working prior to June 16, 2007. McClure testified that Smith told him that her leg was hurting.

On cross-examination, McClure stated that Smith did not mention anything about her back until about a month later.

The ALJ denied Smith benefits and the opinion stated in pertinent part:

The medical evidence reveals the claimant has had an extensive medical history of treatment with a chiropractor for her back concerns over the years. Dr. Van Zandt reviewed the MRI report of November 30, 2007 and opined the claimant's complaints stemmed from the knee rather than the back. The results of the December 10, 2008, MRI revealed "Sigmoid configured degenerative rotoscoliosis." I am unable to find that the claimant's lumbar problems stemmed from her injury on June 16, 2007. The contemporaneous medical reports reveal the claimant complained of knee pain rather than lumbar pain. The MRIs of the claimant's lumbar spine are indicative of degenerative problems rather than trauma. For these reasons, I find the claimant has failed to prove she sustained a compensable back injury.

Because the back injury was found not to be compensable, the issues of medical and temporary total disability will not be discussed.

Smith appealed to the Commission. The Commission affirmed and adopted the decision of the ALJ. This appeal followed.

Smith argues that the Commission arbitrarily disregarded the opinion of Dr. McDonnell. She specifically contends that Dr. McDonnell's letter of November 23, 2007, which states his belief that Smith would not need treatment if she had not had the June 16, 2007 work injury, was ignored by the Commission.

■■■ In appeals involving claims for workers' compensation, our court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence.[4] Substantial evidence exists if reasonable minds could reach ⌊8the Commission's conclusion.[5] The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm.[6] Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief.[7] It is the Commission's function to weigh conflicting evidence; however, it may not arbitrarily disregard medical evidence or the testimony of any witness.[8]

■■■ In order to prove a compensable injury, a claimant must prove, among other things, a causal relationship between his employment and the injury.[9] The determination of whether a causal connection exists is a question of fact for the Commission to determine.[10] When making this determination, the claimant does not receive the benefit of the doubt.[11] A claim ⌊9for workers' compensation benefits must be based on proof. Speculation and conjecture, even if plausible, cannot take the place of proof.[12]

■■■ Here, substantial evidence supports the Commission's decision. Smith had a long history of back problems, which she denied existed until confronted with the medical records. She initially complained that her injury was to her right leg. Her co-worker stated that she first mentioned a possible back injury a month after her compensable injury. When she was seen by Dr. Van Zandt, she reported that she did not have any back pain. Additionally, Dr. Van Zandt opined that Smith's problems were due to her knee injury. Although Smith claims that the Commission arbitrarily disregarded Dr. McDonnell's letter, that letter adds nothing to her position that she suffered a compensable injury on June 16, 2007. Therefore, we affirm.

Affirmed.

HART and WYNNE, JJ., agree.

4. *Galloway v. Tyson Foods, Inc.,* 2010 Ark. App. 610.

5. *Id.*

6. *Id.*

7. *Id.*

8. *Roberts v. Whirlpool,* 102 Ark.App. 284, 284 S.W.3d 100 (2008).

9. *Searcy Indus. Laundry, Inc. v. Ferren,* 82 Ark.App. 69, 110 S.W.3d 306 (2003).

10. *Jeter v. B.R. McGinty Mech.,* 62 Ark.App. 53, 968 S.W.2d 645 (1998).

11. Ark.Code Ann. § 11–9–704(c)(4) (Repl. 2002); *Clark v. San Antonio Shoes, Inc.,* 2009 Ark. App. 689, 2009 WL 4654822.

12. *Ark. Dep't of Corr. v. Glover,* 35 Ark.App. 32, 812 S.W.2d 692 (1991).