2011 Ark. App. 218

**Johnny SMITH, Appellant**

v.

**COMMERCIAL METALS COMPANY and ESIS, Inc., Appellees.**

**No. CA 10–999.**

Court of Appeals of Arkansas.

March 16, 2011.

Gregory Ross Giles, Texarkana, for appellant.

Gill A. Rogers, Little Rock, for appellees.

DOUG MARTIN, Judge.

Appellant Johnny Smith appeals from the Workers' Compensation Commission's denial of benefits upon finding that Smith failed to establish that he sustained a compensable back injury as a result of a fall that occurred on October 2, 2008, or from performing numerous strenuous activities during his employment for appellee Commercial Metals Company (CMC). Smith argues on appeal to this court that the Commission's decision is not supported by substantial evidence and that the Commission incorrectly applied the law. We affirm the Commission's decision.

At a hearing before the administrative law judge (ALJ) on November 5, 2009, fifty-one-year-old Smith testified that he had worked for twenty-seven years as a frame assembler in the manufacture of furniture at the Alan White Company prior to working for CMC. Smith testified that his work at Alan White involved fastening arms, each weighing approximately twenty-five pounds, to the bottom part of couches. Once construction of a piece of furniture was complete, Smith and a co-worker lifted the furniture and stacked the pieces of furniture four high with the assistance of a jack. Smith insisted that he never experienced any difficulty performing his job duties at Alan White.

Smith acknowledged, however, that he saw Dr. David Williams in 2004 with complaints of joint pain and arthritis. Specifically, Dr. Williams's progress notes indicate that Smith complained of stiffness in his joints and back pain. Moreover, Dr. Williams reported, "[Smith] says he has had pain all over for years." Dr. Williams noted that Smith was working as an assembler at Alan White at the time of the visit. Smith testified that Dr. Williams prescribed medication, which Smith took but later discontinued and instead used over-the-counter medications to treat his pain.

When the Alan White Company relocated in May 2005, effectively ending Smith's employment there, Smith filed for unemployment benefits and learned that he was eligible for retraining. Smith attended the University of Arkansas at Hope for two years and became certified in industrial technology. Smith testified that he did not experience aches and pains every day since his treatment with Dr. Williams in 2004; rather, it depended on the activities he performed.

In May 2007, Smith began working for CMC, which manufactures steel joists. Smith worked as both a "rigger" and machine operator. Smith explained that, as a rigger, he was required to lift steel joists, which varied in weight but could weigh several hundred pounds, over his head with the assistance of co-workers. Smith testified that he also performed the duties of a machine operator, which required cutting steel for the joists and entailed lifting and carrying buckets weighing fifty pounds or more.

On November 25, 2008, while working for CMC, Smith went to Dr. James Chambliss complaining of low-back pain that spread to his right hip and radiated down his right leg. Smith was asked by counsel for appellee what precipitated his visit to Dr. Chambliss, and Smith testified:

I was thinking that I had arthritis and that it had gotten worser [sic] or it was getting real bad and I just wanted to know was it the same thing that was happening with me in '04, because I didn't understand what was going on and that's what I was thinking that it was.

Dr. Chambliss's records dated November 25, 2008, indicate that Smith reported that his back pain had started two weeks prior to the visit. In the report, there was no reference to a work-related injury. Dr. Chambliss ordered an MRI, which was performed on December 5, 2008, and showed that Smith suffered from lumbosacral degenerative disk disease, along with "a notable right paracentral/foraminal disk bulge at L4–5." Dr. Chambliss referred Smith to Dr. Lee Buono, a neurosurgeon.

On December 22, 2008, Smith reported to CMC that he sustained a back injury. Smith completed a Form AR–N, on which he listed his date of injury as November 24, 2008, which was the day prior to his first visit with Dr. Chambliss. On the form, Smith related that, on November 23, 2008, he could "hardly get out of bed" and that the pain got worse "from there." Smith also indicated on the form that he did not know he had a back injury and explained that his doctor told him that his back injury had "happen[ed] a little at a time."

On January 7, 2009, Dr. Buono diagnosed a large right-sided disk herniation at L4–5 that was compressing the exiting L5 nerve root. In his notes, Dr. Buono stated that Smith's low-back pain and right-sided leg pain "started October 24, 2008, when he was working and he was moving a box at work." On January 16, 2009, Smith underwent surgery by Dr. Buono to remove the disk herniation and decompress

the nerve root. Dr. Buono released Smith from his care with no restrictions on March 16, 2009. Smith was laid off from his employment at CMC on May 29, 2009.

On June 17, 2009, Dr. Buono authored a letter addressed "To Whom It May Concern," in which he reported that Smith suffered from degenerative disk disease that "was at least in part due to a lifetime of hard labor and heavy lifting on the job." Similarly, Dr. Chambliss authored a letter dated September 16, 2009, in which he stated:

> My first evaluation of Johnnie Smith was November 25, 2008 for symptoms of low back pain with radiation of pain down his right leg. He had reported that the symptoms had started 2 weeks prior to this date while at work. He reports that he does numerous strenuous activities with heavy lifting at his current occupation. He underwent evaluation and treatment of this condition from me and a neurosurgeon. It is my opinion that his condition could have been caused or worsened by his occupation.

On September 29, 2009, Dr. Chambliss reported in a "Physician's Workers' Compensation Questionnaire" that Smith told him that he had tripped and fallen on or about October 2, 2008, while employed at CMC. Dr. Chambliss reported that, according to Smith, he lost his footing when stepping up onto a platform while carrying an armful of shop books and "fell hard onto his right side." The questionnaire reflects that, although Smith was sore, he did not seek medical attention at that time because he did not realize that he was severely injured. The questionnaire also indicates that Smith reported suffering from some general back pain for approximately one month and that he had developed right-leg pain approximately two to three weeks before seeing Dr. Chambliss

on November 25, 2008. Also, Smith reported that, since he began working for CMC, he had no problems with his back or legs prior to October 2, 2008. Based on Smith's history, Dr. Chambliss's examination, and the diagnostic tests, Dr. Chambliss checked "yes" on the questionnaire, indicating that Smith's back and leg pain was the result of a work-related injury that occurred on October 2, 2008, and was the major cause of his need for treatment.

At the hearing before the ALJ, Smith testified that on October 2, 2008, he was carrying a thick stack of paperwork and books when he tripped and fell to one knee and then over onto his right side. Smith testified that he did not think he was hurt at the time. Smith's co-worker Johnny Estes testified that, after hearing "a thud," he turned and saw Smith on his knees. Estes testified that he informed Smith's supervisor about the incident.

Smith's supervisor, Lavelle Cole, testified that, although he was not at work on October 2, 2008, he asked Smith about the fall the next day. Cole testified that Smith did not state that he was experiencing any medical problems at that time and Smith did not demonstrate any difficulty performing his job following the incident. Cole further testified that he recalled Smith mentioning one time following the fall that his back hurt, but Cole was not certain whether he heard this single complaint one month following the fall or three months later.

Larinda Clayton, CMC's safety and environmental manager, testified that she heard about the incident involving Smith from the corporate office before she heard it from Smith. According to Clayton, Smith did not tell her specifically what had happened to hurt his back, and Clayton testified:

> He said that he had been having pain in his leg and that he had had arthritis and

that he had been treating with a doctor for that, and it was the doctor, after MRI, who had told him that it was a back injury, and he said that it wouldn't—he would have filed a claim if he had thought that his back was hurt, but that he just thought it was his arthritis. There wasn't anything specific that he said that he could attribute it to, because he didn't know that he had hurt his back.

Clayton testified that months after the initial paperwork was completed, Smith informed her that he had tripped and fallen at work and asked her if she would find documentation to support his claim. Clayton testified that CMC uses ORO (others reminding others) reports, on which employees anonymously note their observations of possible safety concerns. Clayton testified that, in response to Smith's inquiry, she located an ORO report dated October 2, 2008, that reflected that someone had tripped over a splice bar on a different line than that on which Smith worked. Clayton relayed her finding of the ORO report to Smith.

Smith testified that he arrived at the date of October 2, 2008, as the date on which he fell at work, based on what Clayton told him about finding the ORO report. Smith insisted that he knew he fell at work in October and assumed October 2, 2008, was the date on which he fell; however, he denied tripping over a splice bar at CMC in October. Smith further testified that, from the time he first saw Dr. Chambliss until he received the MRI results, he did not think his back injury was work related. He further testified that he believed his back injury was work related only after the MRI results indicated he had a bulging disk. When asked by counsel for appellee what made him think his

back injury was work related, Smith testified, "Because I knowed [sic] that that was the only place that I had been doing any hard labor or any hard work at, and that's why I figured that it had to be something that I had done at the job that had caused it."

The ALJ found that Smith failed to establish by a preponderance of the evidence that his spinal abnormalities were causally related to a fall that occurred on October 2, 2008, or as a result of his performance of numerous strenuous activities in connection with his employment at CMC. In reaching this conclusion, the ALJ determined that Dr. Chambliss's opinion, which was the best evidence supporting Smith's contention that his back injury resulted from his fall at work, was entitled to no weight in that the history provided to him by Smith "contains statements of material fact which are not accurate." The ALJ further rejected Smith's contention that the major cause of his need for treatment on November 25, 2008, was his employment at CMC. Finding no compensable injury, the ALJ did not address Smith's request for an award of benefits given that the issues in that regard were rendered smoot. In an opinion dated August 19, 2010, the Commission affirmed and adopted the ALJ's opinion and findings in a two-to-one vote.[1]

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *Death & Permanent Total Disability Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876

---

1. The sole dissenting Commissioner would have found that Smith proved that he sus-

tained a compensable back injury and awarded indemnity and medical benefits.

(2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *See ITT/Higbie Mfg. v. Gilliam,* 34 Ark.App. 154, 807 S.W.2d 44 (1991). Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

■ We review a decision of the Commission to determine whether there is substantial evidence to support it. *Rice v. Ga. Pac. Corp.,* 72 Ark.App. 148, 35 S.W.3d 328 (2000). On appeal to our court from a denial of benefits, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Tucker v. Roberts–McNutt, Inc.,* 342 Ark. 511, 29 S.W.3d 706 (2000). A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts. *Farler v. City of Cabot,* 95 Ark.App. 121, 234 S.W.3d 352 (2006). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Neal v. Sparks Reg'l Med. Ctr.,* 104 Ark.App. 97, 102, 289 S.W.3d 163, 167 (2008). The Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Roberts v. Whirlpool,* 102 Ark.App. 284, 284 S.W.3d 100 (2008).

■ On appeal, Smith contends that the Commission's decision is not supported by substantial evidence. We disagree. To prove a compensable injury as a result of a specific incident which is identifiable by time and place of occurrence, the claimant must establish by a preponderance of the evidence: (1) an injury arising out of and in the course of employment; (2) that the injury caused internal or external harm to the body which required medical services or resulted in disability or death; (3) medical evidence supported by objective findings, as defined in Ark.Code Ann. § 11–9–102(16), establishing the injury; and (4) that the injury was caused by a specific incident identifiable by time and place of occurrence. Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2009).

■ A claimant seeking benefits for a gradual-onset injury to the back must prove by a preponderance of the evidence that: (1) the injury arose out of and in the course of his employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; and (3) the injury was the major cause of the disability or need for medical treatment. *Wal–Mart Stores, Inc. v. Leach,* 74 Ark.App. 231, 48 S.W.3d 540 (2001); Ark.Code Ann. § 11–9–102(4)(E)(ii) (Supp.2009). "Major cause" means more than fifty percent of the cause. Ark.Code Ann. § 11–9–102(14)(A) (Supp.2009). In addition, as with injuries caused by a specific incident identifiable by time and place of occurrence, objective medical evidence is necessary to establish the existence and extent of the compensable injury. *Wal–Mart Stores, Inc., supra.*

■ The Commission concluded that symptoms that began six weeks after Smith's fall on October 2, 2008, were not "logically attributable" to the fall. The burden is, of course, on the claimant to prove a causal relation between his condition and his employment. *Holland v. Malvern Sand & Gravel Co.,* 237 Ark. 635, 374 S.W.2d 822 (1964). Objective medical evidence is necessary to establish the existence and extent of an injury but not essential to establish the causal relationship between the injury and a work-related accident. *See Wal–Mart Stores, Inc. v. Van-*

*Wagner,* 337 Ark. 443, 990 S.W.2d 522 (1999) (citing *Stephens Truck Lines v. Millican,* 58 Ark.App. 275, 950 S.W.2d 472 (1997)). In *Hall v. Pittman Construction Co.,* 235 Ark. 104, 105–06, 357 S.W.2d 263, 264 (1962) (citations omitted), our supreme court stated:

> Cases such as this one present problems that gradually and almost imperceptibly progress from issues of law to issues of fact. If the claimant's disability arises soon after the accident and is logically attributable to it, with nothing to suggest any other explanation for the employee's condition, we may say without hesitation that there is no substantial evidence to sustain the commission's refusal to make an award. But if the disability does not manifest itself until many months after the accident, so that reasonable men might disagree about the existence of a causal connection between the accident and the disability, the issue becomes one of fact upon which the commission's conclusion is controlling.

In providing his medical history to Dr. Chambliss, Smith gave different accounts of when his symptoms began. Whereas Dr. Chambliss's records dated November 25, 2008, indicate that Smith began experiencing back pain two weeks before his first visit, the questionnaire Dr. Chambliss completed on September 29, 2009, reflects that Smith had been experiencing back pain for approximately one month and leg pain for two to three weeks prior to the November 2008 visit. Also, Dr. Chambliss's records from the November 25, 2008 visit contain no mention of Smith's having suffered any injury related to his employment at CMC, but the questionnaire Dr. Chambliss completed nearly one year after his initial visit identifies the fall at work on October 2, 2008. Given these inconsistencies, the Commission was entitled to find that Smith's recollection was not trustworthy

and that Dr. Chambliss's opinion was thus entitled to no weight because it was based on Smith's inaccurate statements.

Further compounding the confusion is Dr. Buono's office report from January 2009 in which Smith stated that his symptoms began when he was moving a box at work on October 24, 2008. When Smith finally reported a back injury to his employer on December 22, 2008, which was nearly three months after his fall on October 2, 2008, Smith still did not relate the back injury to his fall or any specific incident at work. Neither the more contemporaneous medical reports nor the testimony of Smith's co-workers indicate that Smith fell hard onto his right side when he tripped on October 2, 2008; rather, the testimony was that Smith fell to his knees. By his own account, Smith did not think he had sustained a work-related injury and did not begin thinking about a specific incident to which his back injury might be attributable until after CMC denied his claim for benefits as a result of a gradual-onset back injury. Given the lapse of time between Smith's fall and the manifestation of symptoms, reasonable men might disagree about the causal connection between Smith's accident and his disability.

Dr. Buono, who opined that Smith's degenerative disk disease was due in part to a lifetime of hard labor and heavy lifting on the job, did not attribute Smith's degenerative disk disease to either an incident at CMC or to his work activities at CMC in general. Further, Smith was employed at CMC for only one and one-half years, while his employment at Alan White spanned a period of twenty-seven years. The Commission found that Smith's job duties, as he described them, at CMC did not appear to be more strenuous than the job duties he performed for twenty-seven years at the Alan White Company. Also,

Smith specifically complained of back pain in 2004 and reported experiencing pain "all over" for years.

Based on the foregoing analysis, as well as our standard of review in viewing the evidence in the light most favorable to the Commission's decision, we hold that there was substantial evidence to support the Commission's determination that Smith failed to establish a compensable back injury as a result of a fall on October 2, 2008, or as a result of performing numerous strenuous activities in connection with his employment at CMC.

 Smith's second point on appeal is that the Commission erred in its application of the law with respect to the "major cause" requirement. Smith argues that Dr. Chambliss opined that Smith's work-related accident was the major cause for Smith's need for treatment of his back injury and that no other doctor contradicted Dr. Chambliss's opinion. In making this argument, Smith disregards the Commission's finding that Dr. Chambliss's opinion is entitled to no weight. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Jones v. Wal-Mart Stores, Inc.,* 100 Ark.App. 17, 262 S.W.3d 630 (2007).

Smith further cites and relies on *Parker v. Atlantic Research Corp.,* 87 Ark. App. 145, 189 S.W.3d 449 (2004), in which this court held that the Commission was clearly wrong in its determination that "major cause" categorically cannot be established by a showing that an asymptomatic preexisting condition became symptomatic, thus requiring treatment, due to a work-related aggravation of that condition. *Parker* is clearly distinguishable from the case at bar. Although Smith claims that there is "no evidence whatsoever" that he had back problems that required treat-

ment prior to working at CMC, Smith specifically testified that he sought and obtained treatment from Dr. Williams for back pain in 2004. Moreover, Smith's testimony is supported by Dr. Williams's progress notes, contained within the record on appeal, in which Dr. Williams noted that Smith had been experiencing pain for several years. In any event, Smith did not raise this argument before the ALJ or the Commission, and we do not consider issues that are raised for the first time on appeal. *See Harding v. City of Texarkana,* 62 Ark.App. 137, 970 S.W.2d 303 (1998).

Affirmed.

VAUGHT, C.J., and GLADWIN, J., agree.