SLIP OPINION



Cite as 2014 Ark. App. 547

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–14–140

| | | |
|---|---|---|
| GEORGE WILLIS | | **Opinion Delivered** October 8, 2014 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G207137] |
| GREAT DANE TRAILERS and AMERICAN ZURICH INSURANCE COMPANY | | |
| | APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant George Willis brought a workers' compensation claim against appellee Great Dane Trailers, alleging that he sustained a compensable aggravation injury to his left knee while working for the appellee on August 9, 2012. The Workers' Compensation Commission denied compensability, finding that Mr. Willis failed to prove an aggravation of a preexisting condition, and also failed to support his claim with new objective medical findings. Mr. Willis now appeals from the Commission's decision, arguing that the Commission's decision denying compensability was not supported by substantial evidence. We affirm.

A claimant has the burden of proving the compensability of his claim by a preponderance of the evidence. *Ayers v. City of Ashdown*, 2014 Ark. App. 270. To prove the occurrence of a specific-incident compensable injury, the claimant must establish by a

SLIP OPINION

preponderance of the evidence (1) that an injury occurred arising out of and in the scope of employment; (2) that the injury caused internal or external harm to the body which required medical services or resulted in disability or death; (3) that the injury is established by medical evidence supported by objective findings; and (4) that the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012); *Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, 381 S.W.3d 921. For purposes of workers' compensation law, an employer takes the employee as it finds him, and an aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Jackson v. O'Reilly Auto., Inc.*, 2013 Ark. App. 755.

When the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). We view the evidence in the light most favorable to the Commission's decision, which will be affirmed when it is supported by substantial evidence. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007). The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* We defer to the Commission's findings of credibility and the resolution of conflicting evidence. *Welcher v. Davis Nursing Home*, 2009 Ark. App. 831.

2

Mr. Willis began working for Great Dane Trailers on July 30, 2012, and it is undisputed that Mr. Willis had a preexisting left-knee condition at the time he was hired. Mr. Willis's duties consisted of tire and rim assembly, and he testified that he sustained an injury while performing his job on August 9, 2012. On that day Mr. Willis was working near Jimmy Grooms, and Mr. Grooms allegedly lost control of a semi-tractor tire weighing 150 pounds and, according to Mr. Willis, the tire slammed into his left leg and pinned him against another tire. Mr. Willis testified that he could not get up and that Mr. Grooms pulled the tire off of him.

Later that day Mr. Willis filed an accident report, and he testified that he visited a doctor who gave him crutches and prescribed therapy. According to Mr. Willis, the injury caused excruciating pain and symptoms that he did not have before, and it rendered him unable to work. Another employee, Robert Whitson, testified that immediately after the accident he saw the tire pressed up against Mr. Willis's leg, and that a few minutes later Mr. Willis said his leg was hurting and showed Mr. Whitson where it was swollen. Approximately four months later, Mr. Willis underwent arthroscopic knee surgery performed by Dr. Brian Dickson on December 17, 2012, to repair a medial-meniscus tear in his left knee.

Mr. Grooms gave a different version of the events of August 9, 2012. Mr. Grooms testified that the tire only brushed the back of Mr. Willis's leg, and that Mr. Willis "kind of moved forward a little bit or slid." Mr. Grooms stated that the tire did not pin Mr. Willis against another tire or cause him to buckle or fall, and that after the incident Mr. Willis said

3

that he was fine and that it was "no big deal." Mr. Willis continued working that afternoon, and Mr. Grooms said that he had no reason to believe that Mr. Willis had been injured.

It is undisputed that Mr. Willis suffered from a preexisting medical condition to his left knee. Most of the pertinent medical evidence in this case was provided by the medical records of Dr. Dickson, an orthopedic surgeon, who saw Mr. Willis for his left-knee condition both before and after the occurrence of the alleged injury. In order to analyze the preexisting medical condition of Mr. Willis, it is helpful to review the medical reports and alleged aggravation in chronological order.

> **MAY 31, 2012:** Dr. Dickson first saw Mr. Willis for left knee pain at a time when Mr. Willis was not employed. In the initial report, Dr. Dickson stated that Mr. Willis had been experiencing left-knee pain and swelling for the past six months. Dr. Dickson reported joint line tenderness with slight pain with McMurray's. Dr. Dickson aspirated 40 cc's of fluid. Dr. Dickson's Assessment was: Left knee pain with effusion. Dr. Dickson ordered an MRI.

> **JUNE 4, 2012:** Mr. Willis telephoned Dr. Dickson's clinic and complained of a "lot of fluid" on his knee and reported that the pain medication was not working.

> **JUNE 6, 2012:** The MRI radiology report indicated "some deformity of the medial meniscus with some osteophytosis and slight extrusion. No definite tear was detected."

> **JUNE 12, 2012:** Mr. Willis returned for a followup visit to Dr. Dickson. Dr. Dickson noted that fluid had developed again and that Mr. Willis now reported "episodes of catching and locking" in his left knee. Dr. Dickson reported that on physical examination Mr. Willis had tenderness along the joint line especially medial and that Mr. Willis did exhibit some pain with McMurray's. Dr. Dickson indicated that Mr. Willis is "acting like he is having some mechanical symptoms about his meniscus." After reviewing the MRI, Dr. Dickson noted that the MRI did show some medial osteoarthritis and Dr. Dickson opined that "I think there is a small meniscus tear as well." Dr. Dickson's previous Assessment on May 31, 2012, was only "left knee pain with effusion." Now, on June 12, 2012, Dr. Dickson's Assessment's progressed to "Left knee osteoarthritis *probable medical meniscus tear*." (Emphasis added.) Dr. Dickson's treatment plan indicated that he and Mr. Willis discussed several options

4

SLIP OPINION

including arthroscopy. Dr. Dickson noted that Mr. Willis had arthroscopy to his right knee previously. Mr. Willis indicated that he was interested in arthroscopy to his left knee and the doctor indicated that he would schedule the surgery to "hopefully . . . get him some relief where he can be more active and continue to work."

**JUNE 26, 2012:** Mr. Willis again visited Dr. Dickson on a followup appointment. On this visit, Dr. Dickson's Assessment was modified again. On June 12, 2012, Dr. Dickson's assessment was "probable meniscus tear." Now Dr. Dickson's assessment was more definite: "left-knee osteoarthritis *with meniscus tear.*" (Emphasis added.) Dr. Dickson aspirated fluid from Mr. Willis's knee and administered a steroid injection. Dr. Dickson further reported that Mr. Willis was scheduled for knee surgery in about three weeks.

For some reason, Mr. Willis did not have arthroscopic surgery to his left knee "in three weeks" as recommended and scheduled by Dr. Dickson. Instead, one month later, on July 26, 2012, Mr. Willis applied for employment with the appellee for work in the tire department. Mr. Willis described the work as follows: "I was hired in the Bogie Department. In the Bogie Department we would assemble the tires and rims together, air them up, and make sure they had the proper weight. A tire like the one I was working on weighed probably from 150 to 180 maybe, I know it was 150 or up, I would say, because they're real heavy." Part of the employment application process included the applicant providing a medical history. The signature block at the bottom of the form contains the following certification: "I hereby certify that I have read and understand all of the questions, and have responded to them to the best of my knowledge. /s/ George Willis." In reviewing the medical questionnaire, Mr. Willis answered "no" to at least 10 questions that, had he answered honestly, required "yes" responses. Those questions include prior history of bone or joint deformity, fractures, swollen and painful joints, arthritis, neck injury, back trouble, admission to the hospital, and recommended surgery. More directly on point, the claimant

5

answered "no" to the question of whether he had any history of "trick or locking knees" despite the fact that Dr. Dickson noted in his medical reports only six weeks earlier that the claimant had experienced episodes of catching and locking in his left knee.

Mr. Willis began work with the appellee on or about July 30, 2012. The alleged accident occurred on August 9, 2012, only ten days later. Mr. Willis's first visit to Dr. Dickson after the alleged accident was on September 27, 2012. At that time Dr. Dickson reported a left-knee contusion and stated, "I do think his current problem is from his work injury, even though he had some preexisting arthritis." On December 4, 2012, Dr. Dickson initialed a prepared statement giving his opinion, within a reasonable degree of medical certainty, that Mr. Willis's work accident resulted in a left-knee injury and need for surgery.

In this appeal, Mr. Willis argues that the Commission erred in concluding that he failed to prove a compensable aggravation to his left knee. Mr. Willis contends that his version of the events surrounding the accident was more logical than Mr. Grooms's version, and that the traumatic impact of the tire exacerbated his preexisting condition. Mr. Willis further argues that the Commission should have credited the opinion of Dr. Dickson, who stated that he thought Mr. Willis's knee problems were work-related. Finally, Mr. Willis claims that he proved an aggravation with objective medical findings because, during the arthroscopic surgery, Dr. Dickson discovered and repaired infirmities that before then had not been detected.

We hold that the Commission's decision displays a substantial basis for denying compensability. The Commission found that Mr. Willis lacked credibility, in part because

6

SLIP OPINION

Mr. Willis had falsified information on the pre-employment medical-history questionnaire. Mr. Willis had a long history of other preexisting medical conditions including significant back, neck, and right-leg problems, and by his own admission he failed to accurately disclose many of his prior problems when answering direct questions about them on the questionnaire. Some of these misrepresentations pertained to the previous problems with Mr. Willis's left knee. In particular, Mr. Willis answered "no" to whether he had ever experienced locking knees and whether he had ever been recommended for surgery. The Commission stated that "judging by the number of questions that [Mr. Willis] admittedly answered wrong, this was an intentional act." Mr. Willis was ultimately terminated from his employment when Great Dane Trailers discovered his dishonesty. We have long held that the Commission is not required to believe the testimony of the claimant or any witness, *Weaver v. Whitaker Furniture Co., Inc.*, 55 Ark. App. 400, 935 S.W.2d 584 (1996), and we are bound to accept the Commission's finding that Mr. Willis's version of the events was not credible.

Moreover, it is the Commission's duty to weigh the medical evidence. *Loar v. Cooper Tire & Rubber Co.*, 2014 Ark. App. 240. In this case the Commission assigned little weight to Dr. Dickson's subsequent opinion on causation, noting that the doctor's opinion was based on the history given to him by Mr. Willis, whose credibility had been discounted by the Commission. The Commission further noted that Mr. Willis had been diagnosed with significant left-knee problems prior to obtaining employment with Great Dane Trailers, and that arthroscopic surgery had already been recommended. Instead of having the surgery as recommended by Dr. Dickson in July 2012, Mr. Willis sought employment with the appellee,

7

where he was employed for just ten days prior to the alleged aggravation. Dr. Dickson's reports show a progression of the diagnoses of Mr. Willis's left-knee problems prior to the alleged injury. On May 31, 2012, the initial diagnosis was only "left knee pain." After the MRI and other clinical testing, on June 12, 2012, Dr. Dickson diagnosed a "*probable* medial meniscus tear" (Emphasis added.) And finally, on June 26, 2012, Dr. Dickson diagnosed a "meniscus tear." and scheduled surgery in three weeks. The surgery was not performed, however, until December 17, 2012, which was after Mr. Willis's brief employment with appellee, and both the pre- and postoperative diagnoses remained the same as before: "left-knee medial +meniscus tear with osteoarthritis."

On this record, we hold that there was substantial evidence supporting the Commission's conclusion that all of Mr. Willis's knee problems were preexisting, and that Mr. Willis failed to prove a compensable aggravation arising out of his employment. Therefore, we affirm the Commission's decision.

Affirmed.

PITTMAN and WALMSLEY, JJ., agree.

*Orr Willhite PLC*, by: *M. Scott Willhite*, for appellant.

*Friday, Eldredge & Clark*, by: *Guy Alton Wade* and *Travis J. Fowler*, for appellees.