

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-15-893

| | |
|---|---|
| JENNIFER LEA HOSEY<br>APPELLANT | **OPINION DELIVERED** APRIL 6, 2016 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G108727 & G209123] |
| WAL-MART ASSOCIATES, INC.<br>APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Jennifer Lea Hosey appeals from the Arkansas Workers' Compensation Commission's ("Commission's") denial of her claim for medical benefits for her neck and shoulder injuries. Appellant contends that her injuries were caused by accidents while in the employ of appellee Wal-Mart Associates, Inc. (Wal-Mart), thus requiring Wal-Mart to provide the medical care for both problems and entitling her to temporary total-disability benefits (TTD). Because the Commission had a substantial basis for the denial of relief, we affirm.

### I. *Facts*

Appellant worked for Wal-Mart as an overnight stocker on October 6, 2011, when she manually pulled a pallet of juice backward and ran the pallet into a stack of milk crates. She was facing the pallet of juice and pulling the pallet jack with both hands when she hit

[Type here]

the milk crates, coming to a dead stop. She was jerked forward, and her right shoulder popped. She immediately had burning pain and sharpness from her shoulder down to her hand on her right side.

Appellant reported the incident to a supervisor, describing it as having caused her arm to have "shooting pains [that] run from the shoulder to [her] fingers on the right side." On October 11, 2011, she described her injury on the Form AR–N as "Rt shoulder, Rt arm all the way down to fingers, Rt side of neck." Dr. Hasmukh Patel treated her for right-arm and shoulder pain on that date, ordered an MRI, and placed her on light duty. Appellant performed light-duty work for Wal-Mart and was referred to Dr. Charles Pearce.

Dr. Pearce noted in his initial evaluation on November 29, 2011,

> She had an MR arthrogram performed on November 7, 2011, which by report showed a posterior superior labral tear, she had previously had an anterior labral repair done by me on August 13, 2008, and this was intact. *I reviewed her scan I do not see a definite posterior superior labral tear as described.* The anterior labral repair is intact.

(Emphasis added.) His assessment was that her right-shoulder pain was consistent with possible nerve irritation, and there were no physical findings consistent with a posterior labral tear. He found that appellant was not at maximum-medical improvement (MMI) and that she should continue light duties. Appellant followed up with Dr. Pearce on December 29, 2011, and he found that she was still not at MMI, but that she could resume her regular work duties.

Appellant requested a change of physician, and on February 15, 2012, appellant saw Dr. Jason Stewart for a second opinion. His assessment was as follows:

> 1) Based on the lack of findings on her physical exam, I believe that the slight loss of motion she has is a residual of the 2008 surgery. At that time she says that she

2

SLIP OPINION

had lost approximately 25% of her function of the arm. I would not estimate it to be that great today. I would say that she has 10% or less deficit in range of motion of the right arm, but I believe this to be a residual still from 2008 and not a new finding. *She does not symptomatically show any signs of a posterior superior labral tear and I would not recommend any surgery on the shoulder for this problem.*

2) Cervical radiculopathy, most likely C5, symptomatic. I would recommend an MRI of the C-spine. *It does not sound like this injury is being covered by Worker's Comp.* If it is, I would recommend an MRI of the C-spine. If not, I have advised her to contact her personal family physician, Dr. Robert Sykes in Nashville, Arkansas, and I would recommend that he get an MRI for her of her neck to see if she does have a symmetric disc bulge causing cervical symptoms that could cause the lateral shoulder pain and arm pain and numbness in the hands.

3) Regarding her right shoulder, she is at [MMI]. There is no impairment rating for this diagnosis, and she can return to her regular duties without restriction. (Emphasis added.)

At Dr. Stewart's recommendation, Dr. Robert Sykes referred appellant to a neurosurgeon, Dr. Fred Contreras, on May 10, 2012, and his nurse noted the following:

[Appellant] went round and round with the doctor of their choice, who told her that the MRI of her right shoulder, which was done at Texarkana MRI, was negative. She states that her thumb and first two fingers on each hand go numb when she raises her arms or drives. Her right elbow aches all the time and she rates it as a 9/10. She also states that her right shoulder and arm just really hurt all the time and she rates that as a 9/10. She is currently on full duty at work at Walmart at this time. She comes to us for further evaluation and management to rule out a possibility of a problem with her neck.

An MRI of her neck was performed on June 4, 2012, and Dr. Contreras found that appellant appeared to have "disc protrusions, although they appear to be on the left rather than the right. She appears to have a small disc herniation at C7,T1 on the left and C6-7 on the left." His impression/plan states,

[G]iven the degree of atrophy and weakness, this probably needs to be worked up. I have indicated that her current study does not demonstrate an obvious source for her pain. I have recommended a myelo-CT which we will get done and then have her follow back up with us.

A nerve-conduction study was done on June 25, 2012, and the results indicated carpal-tunnel syndrome grade 3 (moderately severe) bilaterally, worse on the left. A CT

exam of the C-spine was performed on June 25, 2012, and the only defects found were at the C5-C6 level, where mild bulging of the annulus fibrosis versus a small central disc protrusion was revealed. At the C6-C7 level, axial images demonstrated a small left paracentral disc protrusion. And, at the C7-T1 level, a small left paracentral disc protrusion was found.

Dr. Contreras's nurse reported on July 17, 2012, that appellant had brought her CT exam results and that Dr. Contreras felt strongly that she had nerve-root defects at C6-7-T1. The nurse noted, "Going back to her initial visit in May, definitely her neck problem could be related to work secondary to the fact that she was pulling a pallet of juice and ran into a pallet of milk and pinched the nerves." Appellant was returned to work with a weight-lifting restriction of no greater than twenty pounds.

Appellant underwent a right carpal tunnel release and an anterior-cervical discectomy and fusion on May 6, 2013. After complaining of right-shoulder pain, on September 12, 2013, appellant underwent an MRI of her right shoulder, and the radiologist found a suspected small full-thickness tear of the supraspinatus tendon anteriorly in the region of the rotator interval, finding, "Additional small intrasubstance tear versus postop change is seen more posteriorly in the region of the infraspinatus tendon."

Dr. Charles Daniels examined appellant on March 27, 2014, and summarized appellant's medical history as follows:

> [Appellant] comes in complaining of right shoulder pain. Her problems began in 2008 when she was formerly employed with Wal-Mart National Arkansas. She was seen by Dr. Charles Pearce in Little Rock and had orthoscopic right surgical procedure. She does not know what was done. I do have a copy of an MRI that was done of her right shoulder after that on 11/07/2011, which shows evidence of a labral repair, but no acute pathology. She states that this MRI was obtained after

SLIP OPINION

a reinjury in 2009. She further re-injured her shoulder by her report moving pallets in 2012. She changed from Dr. Pearce along the way to Dr. Jason Stewart. When he saw her he thought she had cervical radiculopathy. She was subsequently referred to a spine surgeon at Texarkana, Texas, and reports she underwent C6-C7 cervical arthrodesis followed up by right carpal tunnel release. She has not been able to see that surgeon after that. She has currently been laid off because of her inability to work due to her right shoulder debility. She had another MRI on 09/12/2013, which possibly demonstrates a small full-thickness rotator cuff tear in rotator interval and has some AC joint DJD.

Dr. Daniels's impression was that she had a small rotator-cuff tear that was full thickness, and he recommended outpatient arthroscopy and mini-open rotator-cuff repair if the MRI findings were borne out.

Appellant filed for medical leave from Wal-Mart beginning July 19, 2012, and the leave was extended, according to her testimony, for about a year. Thereafter, Wal-Mart terminated her employment. At the same time, appellant's long-term disability benefits ran out. Appellant filed a claim with the Commission for her neck, right shoulder, and bilateral carpal-tunnel injuries on September 12, 2012, and Wal-Mart controverted her claims related to her neck and carpal tunnel and refused any further treatment for the right shoulder.

After a hearing, the administrative law judge (ALJ) determined that appellant had sustained a compensable injury to her right shoulder on October 6, 2011. However, he found that she failed to establish by a preponderance of the evidence that (1) she had sustained a compensable neck injury or a compensable carpal-tunnel-syndrome injury; (2) the rotator-cuff repair proposed by Dr. Daniels was related to her compensable right-shoulder injury; and (3) she was entitled to TTD after July 19, 2012.

This decision was appealed to the Commission, and the Commission affirmed and adopted the ALJ's decision on September 30, 2015. Appellant filed her notice of appeal on

October 15, 2015, and this appeal timely followed.  On appeal, appellant is abandoning her claim for a right-carpal-tunnel injury.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ.  *Smith v. Commercial Metals Co.*, 2011 Ark. App. 218, 382 S.W.3d 764. In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law.  *Id*.  Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission.  *Id*. Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

## II. *Standard of Review*

To prove a compensable injury as a result of a specific incident which is identifiable by time and place of occurrence, the claimant must establish by a preponderance of the evidence (1) an injury arising out of and in the course of employment; (2) that the injury caused internal or external harm to the body which required medical services or resulted in disability or death; (3) medical evidence supported by objective findings, as defined in Ark. Code Ann. § 11-9-102(16) (Repl. 2012), establishing the injury; and (4) that the injury was caused by a specific incident identifiable by time and place of occurrence.  Ark. Code Ann. § 11-9-102(4)(A)(i).

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings.  *Ganus v. St. Bernard's Hosp., LLC*, 2015 Ark. App. 163, 457 S.W.3d 683.  When the Commission denies benefits because the claimant has failed to meet his burden of proof,

the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Willis v. Great Dane Trailers*, 2014 Ark. App. 547, 444 S.W.3d 423. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.*

### III. *Neck and Shoulder Claims*

Appellant claims that the decision denying benefits for her neck and shoulder injuries is not supported by substantial evidence. The ALJ denied her benefits for her neck, finding that she did not sustain a neck injury for three reasons: (1) Her testimony and written accounts about what happened provided no indication that she received neck trauma; (2) She pursued neck surgery under private insurance; and (3) No doctor had identified any neck or spine trauma that she might have sustained in the incident.

Appellant contends that she reported a neck injury only five days after the at-work incident. She cites Dr. Stewart's recommendation on February 15, 2012, that she obtain an MRI of the C-spine and the findings of the MRI performed on June 4, 2012, which were a small left paracentral disc protrusion at C7–T1 and C6–C7, and a minimal central disc protrusion at C5–C6. She also points to the cervical myelogram on June 25, 2012. Based on that test, Dr. Contreras's nurse wrote on July 17, 2012, that appellant had nerve-root defects at C6-7, T1.[1] The nurse also wrote, "Going back to her initial visit in May, definitely her neck problem could be related to work secondary to the fact that she was

---

[1] The report of July 17, 2012, was written by Sherry Missildine, RN, ACNP and reviewed by Dr. Contreras.

pulling a pallet of juice and ran into the pallet of milk and pinched the nerves." Thus, appellant contends that she presented objective-medical evidence of a neck injury and an opinion from a treating specialist that the condition was related to her on-the-job incident in October 2011.

Regarding her shoulder, appellant had another MRI in September 2013, and Dr. Daniels wrote that she had a possible small rotator-cuff tear. Appellant argues that despite the medical evidence, the ALJ concluded that there was no causal connection between the rotator-cuff tear in 2013 and the October 2011 accident.

She also contends that the ALJ erred as a matter of law by requiring a medical opinion on causation because he erroneously based his determination on compensability of the neck injury on what he called a lack of a physician's opinion that appellant "sustained a neck injury while pulling a pallet on October 6, 2011." She cites *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 447, 990 S.W.2d 522, 524 (1999), for the proposition that objective medical evidence is not essential to establish the causal relationship between the injury and a work-related accident in a workers' compensation case. She contends that there are scans showing definite disc and neck injuries. She also claims that the record contains Dr. Contreras's opinion that the neck injury was associated with the accident at work. Thus, she argues that the ALJ erred as a matter of law by requiring an opinion from a physician that appellant sustained a neck injury while pulling a pallet.

She also contends that her shoulder and neck injuries are compensable based on the accident having aggravated her preexisting conditions. *Ozark Nat'l Food v. Pierson*, 2012 Ark. App. 133, 389 S.W.3d 105. She claims that the accident made her shoulder problems

worse, and the same holds true for her neck injury. She claims that if she had issues with her neck before the 2011 accident, she was not symptomatic, but she became symptomatic afterward, necessitating medical treatment. *Williams v. L&W Janitorial, Inc.*, 85 Ark. App. 1, 145 S.W.3d 383 (2004).

Further citing *Williams*, *supra*, she contends that the compensable injury here was a factor in the resulting need for medical treatment, and this was the opinion of Dr. Contreras. She argues that after Dr. Contreras performed the neck surgery, most of her symptoms disappeared, save for the continuing pain in her shoulder. This postsurgical improvement is a proper consideration in determining whether surgery was reasonable and necessary. *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 48 S.W.3d 544 (2001).

Appellant claims that Arkansas courts have long recognized that a causal relationship may be established between an employment-related incident and a subsequent physical injury based on evidence that the injury manifested itself within a reasonable period of time following the incident so that the injury is logically attributable to the incident, where there is no other reasonable explanation for the injury, citing *Hall v. Pittman Constr. Co.*, 235 Ark. 104, 357 S.W.2d 263 (1962).[2] She contends that she complained of neck, shoulder, and arm pain within five days of the accident and asserts that this was a reasonable period of time following the incident. Thus, as Dr. Contreras pointed out, appellant maintains that her injury is logically attributable to the incident.

---

[2] We note that Act 10 of 1986, Second Extraordinary Session, codified as Ark. Code Ann. § 11-9-704(c)(4) (1987), changed the law to provide that in determining whether a party has met its burden of proof, ALJs and the Commission shall weigh the evidence impartially and without giving the benefit of the doubt to any party. *Wade v. Mr. C. Cavenaugh's*, 298 Ark. 363, 367, 768 S.W.2d 521, 522–23 (1989).

We disagree with appellant's contention that the ALJ required objective medical evidence to establish the causal relationship between the alleged neck injury and the work-related accident. The ALJ's opinion regarding appellant's claimed neck injury states as follows:

> First, Ms. Hosey's account of what happened with the pallet jack provides no indication to this examiner that she received any trauma whatsoever to her neck and cervical spine simply by walking backward five feet dragging a pallet of juice until the pallet hit a stack of milk crates. Her attorney at one point described the incident as involving "this jerking sensation and her grabbing a hold of and holding onto that and the jerking and the holding back and forth . . ." Again, however, there is no indication from either Ms. Hosey's written accounts or her hearing testimony indicating that while pulling the jack five feet and then hitting the milk crates with the pallet she either slipped, fell, hit her head, or sustained any other identifiable trauma to her head, neck or spine.
>
> Second, when Ms. Hosey pursued neck surgery with Dr. Contreras, she did so using private insurance. Third, neither Dr. Contreras nor any other physician has ever identified any type of head, neck, or spine trauma that Ms. Hosey might have sustained in the incident that she described, and no physician has opined that Ms. Hosey sustained a neck injury while pulling a pallet on October 6, 2011. On this record, Ms. Hosey has failed to establish a work related neck injury by either a preponderance of the medical evidence or a preponderance of the non-medical evidence. I find that the respondent is not liable for any of the treatment that Ms. Hosey has received related to her neck.

The determination of whether a causal connection exists is a question of fact for the Commission to determine. *Smith v. Sw. Ark. Food Bank*, 2011 Ark. App. 181, 381 S.W.3d 889. A claim for workers' compensation benefits must be based on proof. *Id.* Credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

Based on our review, all of appellant's arguments are resolved by acknowledging that the Commission did not give weight to Dr. Contreras's report, scribed by his nurse practitioner, which stated that the possible nerve-root defect "definitely" could be related

to the 2011 work incident.    The opinion was based on subjective information from appellant; however, the Commission is not bound by a doctor's opinion that is based on facts related to him by the claimant.  *Beliew v. Lenox Indus.*, 2010 Ark. App. 112.

With our standard of review in mind, we hold that the Commission had a substantial basis for the denial of relief, and the Commission did not err as a matter of law.   The Commission found, based on the evidence in the record, that it was not credible that the minor incident described by appellant caused all the fairly serious injuries as alleged.   The evidence was that appellant had reported problems with her neck and numbness, pain, and tingling in her hands for years prior to the work-related incident.   Wal-Mart points to appellant's complaint of neck pain that extended into her hands "in a stocking glove fashion," on May 29, 2008, and again in November 2009.   She testified that she had a tingling in her hands for about a year prior to the October 2011 injury.   She also testified that she had previously used wrist splints due to pain in her hands, like a needle sensation, since before 2008, when she worked at the Days Inn.   The medical records indicate degeneration in the left side of the neck, and she testified that she hurt her right arm and right shoulder.

Regarding appellant's right shoulder, the MRI taken soon after the incident on November 7, 2011, did not show any indication of a rotator-cuff tear.  Further, neither Dr. Pearce nor Dr. Stewart reported any indication that appellant's complaints of pain could be associated with a rotator-cuff tear.  The Commission gave weight to Dr. Pearce's opinion, as he had been treating appellant since 2008 when he had performed a previous right-shoulder surgery on her.  Both Dr. Pearce and Dr. Stewart concluded that the right-shoulder

11

injury on October 6, 2011, did not cause any permanent impairment. The Commission considered Dr. Daniels's proposal of rotator-cuff surgery and determined that he had been given a materially inaccurate history. The ALJ noted that Dr. Daniels had been told that the pallet incident occurred in 2012, which was after the 2011 shoulder MRI.

The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief; this court is foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Jackson v. O'Reilly Auto. Inc.*, 2013 Ark. App. 755. The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Id.* While it is within the province of the Commission to weigh conflicting evidence, the Commission may not arbitrarily disregard medical evidence. *Id.* Accordingly, we hold that substantial evidence supports the Commission's determination denying appellant's claims for her neck and shoulder injuries. The Commission was well within its authority in giving greater weight to Dr. Pearce's and Dr. Stewart's opinions rather than relying on the opinions of Dr. Daniels and Dr. Contreras.

### IV. *TTD*

To receive TTD benefits, the claimant must prove by a preponderance of the evidence that he is within the healing period and is totally incapacitated from earning wages. *Union Drilling, Inc. v. Griffith*, 2015 Ark. App. 273, 2015 WL 1952691. The healing period ends when the employee is as far restored as the permanent nature of the injury permits; thus, if the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition, the healing period has ended. *Id.* The determination of when the healing period has ended is a factual determination for the Commission. *Smallwood v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 466, 375 S.W.3d 747.

*Ark. Dep't of Parks & Tourism v. Price*, 2016 Ark. App. 109, at 10, ___ S.W.3d ___, ___.

Appellant argues that she has been unable to work for a long time, first taking short-term and then long-term disability, until Wal-Mart terminated her employment. Her doctors told her not to work, at least until a few weeks after the neck surgery. Thus, she contends that she is entitled to TTD for that time period.

Wal-Mart contends that the Commission found Dr. Stewart credible and gave great weight to his indication that appellant had reached MMI for her compensable right-shoulder injury and could return to regular-duty work on February 15, 2012. Appellant wrote on her leave request that her reason was her "own serious health condition." Because we affirm the Commission's determination that the various injuries for which appellant sought treatment after July 19, 2012, were not causally related to the October 6, 2011 work incident, we affirm the Commission's decision to deny TTD on or after July 19, 2012.

Affirmed.

HARRISON and WHITEAKER, JJ., agree.

*Moore, Giles & Matteson, L.L.P.*, by: *Greg Giles*, for appellant.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellee.